[No. 62890-4. En Banc. January 18, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. DENNIS
M. JOHNSON, *Petitioner*.

432

*Hugh M. Spall, Jr.*, for petitioner.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Duane Knittle, Deputy*, for respondent.

SMITH, J. — Petitioner Dennis M. Johnson seeks review of a decision by the Court of Appeals, Division Three, affirming his conviction for possession of a controlled substance, methamphetamine, in the Yakima County Superior Court and the trial court's ruling which denied his motion to suppress evidence found in the sleeping compartment of the cab of a tractor-trailer he was driving upon an interstate highway. We granted review. We affirm.

## QUESTION PRESENTED

The sole question presented in this case is whether a state trooper exceeded the lawful scope of a search incident to arrest under a bench warrant by searching the sleeping compartment in the cab of a tractor-trailer driven by a defendant upon an interstate highway and examining the contents of an open small flat leather-like litter bag clipped to the wall of the compartment.

## STATEMENT OF FACTS

Just before 8:00 P.M. on December 14, 1992, Washington State Trooper John Berends observed a Peterbilt tractor-trailer rig make two lane changes without signaling on northbound Interstate 82 in Yakima County.[1] He stopped it near the Nob Hill exit, milepost 34.[2] The trooper got out of his patrol car and met the driver, Petitioner Dennis M. Johnson, who presumably alighted from the cab, between

---

[1]Report of Proceedings, July 15, 1993, at 19-20.

[2]*Id.* at 20.

the tractor-trailer and the patrol car. When the trooper asked for his license, Petitioner produced an apparently valid California driver's license.[3] Trooper Berends inspected the license, gave Petitioner an oral warning and allowed him to proceed without issuing a citation to him.[4] Petitioner was then employed as a driver for the owner, an Olympia-based over-the-road trucking company.

Returning to his patrol car, Trooper Berends made a driver's license check on Petitioner Johnson[5] which revealed an outstanding bench warrant from Yakima County District Court for one Dennis M. Johnson for failure to appear on a charge of driving while license suspended. Trooper Berends contacted another trooper who located the tractor-trailer which was continuing on the highway.[6] Trooper Berends and that trooper pursued the tractor-trailer Petitioner was driving and stopped it on northbound Interstate 82 about eight miles from the first stop south of the Firing Center exit near milepost 26.[7] Trooper Berends again got out of his patrol car and met Petitioner, who presumably alighted from the cab, between the tractor-trailer and the patrol car. He arrested Petitioner on the bench warrant, handcuffed him, searched him, and placed him in the patrol car.[8]

Trooper Berends then entered the cab of the tractor-trailer through the driver's door[9] and searched the

[3] *Id.* at 22.

[4] *Id.* at 22. Defense counsel on cross-examination of Trooper Berends asked whether he issued a uniform traffic citation at the prebooking area charging Petitioner with two misdemeanors of driving while license suspended in the third degree and driving while under the influence of alcohol and/or drugs. The prosecutor objected on relevance grounds. The court sustained. Information concerning any such charges is therefore not in the record. *Id.* at 57-59, 69.

[5] *Id.* at 23.

[6] *Id.* at 25.

[7] *Id.* at 26.

[8] *Id.* at 28.

[9] *Id.* at 30.

interior, including the sleeping compartment (sleeper)[10] behind the seating area of the cab.[11] He was searching for papers relating to ownership of the vehicle and for weapons.[12] The sleeper contained a bed and a clothes closet.[13] It was accessible to the cab by an open portal[14] or "a walk-through area connected by a rubber boot."[15] A curtain could be drawn across the portal to separate the driver's seating area of the cab from the sleeper.[16] At trial, Trooper Berends testified he did not remember the curtain separating the cab from the sleeper.[17] He stated "If there was [a curtain], it was drawn, pulled to one side."[18]

Trooper Berends found in the sleeper a "leather like, litter bag type pouch" hanging on the wall behind the driver's seat.[19] The pouch was not fastened or locked.[20] He looked in the pouch and found two small plastic bags containing a white powdery substance he believed to be cocaine, a small mirror, a razor blade, a pen holder, a film canister with marijuana, and a pipe with marijuana residue.[21] He also found a logbook in the sleeper. He seized all

---

[10]The parties use various terms to describe the sleeping compartment. The manufacturer uses the word "sleeper." *See* Ex. 12.

[11]*Id.* at 28. Trooper Berends' search took place "[m]inutes" after he placed Petitioner Johnson in the patrol car. *Id.* at 64.

[12]*Id.* at 61.

[13]*Id.* at 111.

[14]Clerk's Papers at 7.

[15]Verbatim Report of Proceedings, July 15, 1993, at 108. The sleeper had an outside door on the left side, sometimes referred to as an emergency exit. *Id.* at 104, 108.

[16]*Id.* at 112; Clerk's Papers at 7.

[17]Verbatim Report of Proceedings, July 15, 1993, at 30.

[18]*Id.* at 30.

[19]*Id.* at 31. Under RCW 70.93.100 owners of vehicles are required to keep and use a state-approved litter bag in their vehicles. This was not such a receptacle.

[20]*Id.* at 33.

[21]*Id.* at 31.

these items for evidence.[22]

On December 17, 1992, the Yakima County Prosecuting Attorney initially charged Petitioner by information with possession of a controlled substance, cocaine.[23] Laboratory tests later determined the white powder was methamphetamine.[24] An amended information was then filed on July 15, 1993, charging Petitioner with possession of a controlled substance, methamphetamine.[25]

On July 15, 1993, Petitioner's case came before the Honorable Michael W. Leavitt in the Yakima County Superior Court in a combined CrR 3.6 suppression hearing and trial.[26] Petitioner had moved to suppress the evidence seized from the sleeper on the ground that the search of the sleeper exceeded the lawful scope of a search incident to an arrest.[27] The trial court denied the motion to suppress.[28]

During trial, Petitioner's counsel offered in evidence Polaroid photographs of a Peterbilt tractor-trailer marked as exhibits for identification 7, 8, and 9.[29] Defense witness John Leonard Brooks, who repaired a Peterbilt tractor-trailer for Petitioner on December 14, 1992, identified the photographs as accurate portrayals of the tractor-trailer he repaired for Petitioner on December 14,[30] but he could not say whether the vehicle in the photographs was actually the one Petitioner was driving when he was stopped

---

[22]*Id.* at 33.

[23]*Id.* at 4; Clerk's Papers at 13.

[24]Verbatim Report of Proceedings, July 15, 1993, at 4, 88-93.

[25]*Id.* at 10-11; Clerk's Papers at 12.

[26]Verbatim Report of Proceedings, July 15, 1993, at 4.

[27]*See id.* at 8, 119-24.

[28]*Id.* at 128.

[29]*Id.* at 104-05. Exhibit 7 depicted a 379 Peterbilt tractor-trailer, number 130. *Id.* at 104. Exhibit 8 showed the tractor-trailer's sleeper with the outside access door open. *Id.* at 104. Exhibit 9 depicted the tractor-trailer from the driver's side. *Id.* at 104.

[30]*See id.* at 101, 103-04.

by Trooper Berends later that same day.[31] The court did not rule on admissibility of the photographs nor was the offer for admission renewed by counsel. They are therefore not now before this court.

The trial court found Petitioner "guilty" of possession of a controlled substance, methamphetamine,[32] and sentenced him to 45 days.[33] The court then on August 27, 1993, entered the following "Findings of Fact and Conclusions of Law on Suppression Motion (CrR 3.6) and Defendant's Guilt":[34]

## UNDISPUTED FINDINGS OF FACT

### I.

At the suppression hearing and trial, State presented testimony from two witnesses: Washington State Trooper John Berends, and Washington State Patrol Forensic Scientist Brad Johnston. The Defendant presented testimony from one witness: John Brooks.

### II.

On December 14, 1992, shortly before 8:00 p.m., in Yakima, Washiangton [sic], State Patrol Trooper John Berends, was on routine traffic patrol, driving northbound on Interstate 82 when he saw a white Peterbuilt [sic] tractor-trailer make two lane changes (from the outside to the inside lane, then back again after passing another truck) without activating its turn signal. Trooper Berends stopped the truck at milepost 34. He saw no one in or near the truck other than the defendant who produced a California driver's license which identified him as Dennis Malcome Johnson. Trooper Berends wrote down Mr. Johnson's name and date of birth, then issued Mr. Johnson a verbal warning for the lane change infractions and told him he was free to leave.

---

[31]*Id.* at 106.

[32]*Id.* at 143.

[33]Clerk's Papers at 3.

[34]*Id.* at 5.

## II. [sic III.]

Returning to his patrol car, Trooper Berends decided to run a driver's license check on Mr. Johnson and relayed Mr. Johnson's name and date of birth to Washington State Patrol communications. Washington State Patrol communications responded that there existed an outstanding bench warrant from Yakima County District Court for Mr. Johnson's arrest for failure to appear on a charge of driving while license suspended.

## III. [sic IV.]

Trooper Berends stopped the white Peterbuilt [sic] tractor-trailer again at milepost 26. He saw no one in or near the truck other than Mr. Johnson. Trooper Berends arrested Mr. Johnson, then handcuffed him, searched him and placed him in the back seat of a patrol car. He checked to make sure the warrant was valid. Several minutes later, while Mr. Johnson was still seated in the patrol car at the scene, Trooper Berends entered the truck cab through the driver's door to search for weapons and evidence of vehicle ownership. He did not ask Mr. Johnson whether he consented to this search.

## IV. [sic V.]

The cab was connected to a sleeping unit to which Trooper Berends gained access by passing through an open portal. A curtain was in place which could be drawn across the portal, but Trooper Berends could not recall whether the curtain was open or shut. Inside the sleeping unit, Trooper Berends found a leather pouch hanging on the wall. The pouch had no latch or other means of locking it. Looking into the pouch, Trooper Berends found: (1) two small clear plastic baggies containing a white powdery substance which he believed to be cocaine; (2) a small mirror; (3) a razor blade; (4) a pipe with marijuana residue; and (5) a small tube which turned out to be a ball point pen holder. Trooper Berends seized these items. He also seized a log book.

## V. [sic VI.]

Washington State Patrol Crime Lab Forensic Scientist

Brad Johnston tested the powder in the two plastic baggies. The powder in both baggies was methamphetamine.

## VI. [sic VII.]

John Brooks, an employee at Western Peterbilt, located at 2028 Rudkin Road, Union Gap, Washington, repaired a white Peterbuilt [sic] tractor-trailer on December 14, 199[2] between 12:30 p.m. and 4:00 p.m.

## DISPUTED FINDINGS OF FACT

There are no disputed findings of fact.

## CONCLUSIONS OF LAW

### I.

The court has jurisdiction over the person of the defendant and the subject matter of this action.

### II.

Mr. Johnson was the driver of, and was alone in, the white Peterbuilt [sic] tractor-trailer both times it was stopped by Trooper Berends.

### III.

Trooper Berends' first stop of Mr. Johnson was lawful because he had just seen Mr. Johnson commit two traffic infractions: changing lanes without activating his turn signal. Trooper Berends' second stop of Mr. Johnson was lawful, because he had probable cause to arrest him on the outstanding warrant from Yakima County District Court for failure to appear on a charge of driving while license suspended. Trooper Berends lawfully arrested Mr. Johnson on the outstanding warrant.

### IV.

The sleeping unit was part of the truck's passenger compartment, because it: (a) was attached to the cab; (b) was connected to the cab by a portal which had no door, only a

curtain which may or may not have been drawn shut; and (c) is not analagous [sic] to a locked glove box or trunk but rather to the back seat of a passenger automobile. The fact that Trooper Berends discovered the methamphetamine in the sleeping unit, as opposed to the cab does not distinguish this case from State v. Stroud, 106 Wn.2d 144, 720 P.2d 436 (1986).

## V.

Trooper Berends discovered the methamphetamine pursuant to a lawful search because: (a) the search was conducted incident, and immediately subsequent, to Mr. Johnson's arrest when he was still physically at the scene; (b) only the passenger compartment of the truck was searched; (c) the leather pouch was not a locked container in which Mr. Johnson had a reasonable expectation of privacy but rather was analagous [sic] to the purse at issue in State v. Fladebo, 113 Wn.2d 388, 779 P.2d 707 (1989); and (d) Trooper Berends was searching for weapons and destructible evidence of vehicle ownership.

## VI.

Insufficient evidence exists to establish that the white Peterbuilt [sic] tractor-trailer repaired by John Brooks was the same white Peterbuilt [sic] tractor-trailer stopped twice by Trooper Berends.

## VII.

Mr. Johnson was in actual possession of the truck and its sleeping compartment because: (a) he was driving, and was alone in, the truck both times it was stopped; and (b) the log book shows that no one else had driven the truck for at least two days. Under the totality of circumstances, substantial evidence tends to establish circumstances from which the court can infer that Mr. Johnson had dominion and control over the methamphetamine and thus was in constructive possession of it because: (a) he was in actual possession of the truck and its sleeping compartment; and (b) no evidence exists that any one else had dominion and control over the truck, its sleeping compartment and the methamphetamine.

## VIII.

Defendant's motion to suppress the State's evidence pursuant to CrR 3.6 is denied. The evidence seized by Trooper Berends is admissible.

## IX.

Defendant has failed to prove by a preponderance of the evidence that he unwittingly possessed the methamphetamine.

## X.

The court finds beyond a reasonable doubt that on December 14, 199[2] in Yakima County, Washington, Dennis Malcome Johnson possessed the controlled substance: methamphetamine. Dennis Malcome Johnson is guilty of the crime of Possession Of A Controlled Substance: Methamphetamine.

The Court of Appeals, Division Three, affirmed the trial court's decision on April 6, 1995.[35] We granted review on September 7, 1995.

### DISCUSSION

Petitioner assigns error to the trial court's decision denying his motion to suppress evidence found in the sleeper compartment in the cab of the tractor-trailer he was driving immediately following his arrest on an outstanding bench warrant.[36]

■ Petitioner also assigns error to the trial court entering the following conclusions of law:[37] (1) Conclusion of Law IV, which identifies the "sleeping unit" as part of the truck's passenger compartment;[38] (2) Conclusion of Law V, which states Trooper Berends discovered the methamphet-

---

[35]*State v. Johnson*, 77 Wn. App. 441, 892 P.2d 106 (1995).

[36]Br. of Appellant at 1.

[37]Clerk's Papers at 5.

[38]Br. of Appellant at 1; Clerk's Papers at 8-9.

amine during a lawful search;[39] (3) Conclusion of Law VI, which states there was insufficient evidence to establish that the vehicle repaired by John Brooks was the one Trooper Berends stopped twice;[40] (4) Conclusion of Law VIII, which denies Petitioner's motion to suppress evidence seized by Trooper Berends and concludes the evidence is admissible;[41] and (5) Conclusion of Law X, which concludes Petitioner is guilty of possession of a controlled substance, methamphetamine.[42] This court reviews issues of law de novo.[43]

 Petitioner claims his rights under the Fourth Amendment to the United States Constitution and Washington Constitution article I, section 7 have been violated.[44] When a party claims violations under both the state and federal constitutions, this court will first interpret the Washington Constitution to develop a body of independent jurisprudence because considering the United States Constitution first would be premature.[45]

Washington Constitution Article I, Section 7

Petitioner contends the search of the pouch found on the sleeper wall violated Washington Constitution article I, section 7 because it was a "litter bag" found in his

---

[39]Br. of Appellant at 1-2; Clerk's Papers at 9.

[40]Br. of Appellant at 2; Clerk's Papers at 9.

[41]Br. of Appellant at 2; Clerk's Papers at 10.

[42]Br. of Appellant at 2-3; Clerk's Papers at 10.

[43]*State v. Ford*, 125 Wn.2d 919, 923, 891 P.2d 712 (1995).

[44]In his initial brief, Petitioner discusses his Fourth Amendment claim first. He then states "If this court decides that the search of the sleeping compartment did not violate Mr. Johnson's Fourth Amendment rights, then it needs to decide whether the Washington Constitution offers more protection . . . ." Br. of Appellant at 16.

[45]*State v. Coe*, 101 Wn.2d 364, 373-74, 679 P.2d 353 (1984); *State v. Young*, 123 Wn.2d 173, 178-79, 867 P.2d 593 (1994).

"temporary residence." He relies on *State v. Boland*[46] to support this argument. Addressing the *Gunwall*[47] factors, he claims Constitution article I, section 7 provides greater protection for his privacy rights in the pouch than does the Fourth Amendment.[48]

Respondent State argues the sleeper is part of the passenger compartment, and that *State v. Stroud*[49] concluded a passenger compartment can be searched incident to arrest of a defendant. Respondent thus argues that search of the sleeper and the pouch did not violate Constitution article I, section 7. Respondent also argues the pouch was not in fact a litter bag, but instead was merely a container used to store drugs and drug paraphernalia. Respondent claims Petitioner's comparison of the pouch to the garbage receptacle in *Boland* is misplaced.[50]

■ This court examines six nonexclusive factors announced in *Gunwall* to determine, in a given case, whether it is appropriate to independently interpret the state constitution and, if so, whether the state constitution provides broader protection than the federal constitution.[51] These factors are: (1) the textual language; (2) textual differences; (3) constitutional and common law history; (4) preexisting state law; (5) structural differences; and (6) matters of particular state or local concern.[52] Petitioner has adequately briefed the *Gunwall* factors.[53] Thus, we can determine first whether it is appropriate to engage in

[46]115 Wn.2d 571, 800 P.2d 1112 (1990).

[47]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

[48]Br. of Appellant at 16-25.

[49]106 Wn.2d 144, 152, 720 P.2d 436 (1986).

[50]Respondent did not discuss the six *Gunwall* factors.

[51]*Gunwall*, 106 Wn.2d at 65-67.

[52]*Id.* at 61-62.

[53]*See State v. Maxfield*, 125 Wn.2d 378, 394, 886 P.2d 123 (1994); *State v. Wethered*, 110 Wn.2d 466, 472-73, 755 P.2d 797 (1988). Petitioner did not discuss whether independent state constitutional analysis was *appropriate* under these factors. He simply analyzed those factors and concluded that Const. art. I, § 7

independent state constitutional analysis by applying those factors.

■ ■ This court previously analyzed Constitution article I, section 7 in *Gunwall*, covering factors (1), (2), (3) and (5). We need now only to analyze factors (4) and (6) in a different context.[54] Analysis under factors (1), (2), (3) and (5) generally remains the same each time a constitutional provision is examined. However, factors (4) and (6) "are generally unique to the context in which the interpretation question arises."[55] Petitioner discusses all six *Gunwall* factors. We need only discuss factors (4) *preexisting law* and (6) *matters of particular state or local concern.*

Under the fourth *Gunwall* factor, we examine preexisting state law. Petitioner cites statutes which identify privacy areas in motor vehicles as exceptions to prohibitions against possession of alcoholic beverages in vehicles[56] and make certain vehicles subject to laws against prowling.[57] He argues that those statutes recognize privacy interests in living quarters of motor homes or campers which are not recognized in passenger compartments. However, the statutes he cites do not refer in any manner to a sleeper in the cab of a tractor-trailer traveling upon a highway.

The State of Washington has long and broadly regulated travel on public thoroughfares. For example, in the Code of 1881, adopted before statehood, sections 3030-31 governed the law of travel on public highways and sections 3007-08 made ferry operators responsible for conveying their passengers safely and keeping diligent watch

---

provided more protection for his privacy interests than the Fourth Amendment. Br. of Appellant at 16, 25.

[54]*State v. Russell*, 125 Wn.2d 24, 58, 882 P.2d 747 (1994) (citing *Boland*, 115 Wn.2d at 576), *cert. denied*, 115 S. Ct. 2004, 131 L. Ed. 2d 1005 (1995). (In *Boland*, which, like this case, involved Const. art. I, § 7, this court adopted the *Gunwall* analysis of the first, second, third and fifth factors.)

[55]*Id.*

[56]RCW 46.61.519(4).

[57]RCW 9A.52.095, .100.

over the ferry's operations. Washington's existing statutes broadly regulate motor vehicles, public highways and transportation in general.[58] The long history of regulating travel in this state strongly supports independent state constitutional analysis.

███ The sixth *Gunwall* factor requires us to examine whether the matters at issue are of particular state interest or local concern. At issue here is whether Trooper Berends' search of the sleeper and the pouch found on the wall of the sleeper unreasonably intruded upon Petitioner's privacy interests. Petitioner correctly recognizes that privacy interests are matters of particular state interest and local concern.[59]

Constitution article I, section 7 declares "[n]o person shall be disturbed in [that person's] private affairs, or [the person's] home invaded, without authority of law." The provision protects a person's home or private affairs from warrantless searches. Privacy interests protected include "those privacy interests which citizens of this state have held, and should be entitled to hold, safe from governmental trespass absent a warrant."[60] The language of Constitution article I, section 7 provides greater protection for the privacy interests of individuals than the Fourth Amendment.[61] But "[a] determination that a given state constitutional provision affords enhanced protection in a particular context does not necessarily mandate such a result in a different context."[62] As under the Fourth Amendment, a warrantless search under Constitution article I, section 7 is per se unreasonable unless it falls within one of the

---

[58]RCW Title 46; RCW Title 47.

[59]*See Boland*, 115 Wn.2d at 576.

[60]*Id.* at 577 (quoting *State v. Myrick*, 102 Wn.2d 506, 511, 688 P.2d 151 (1984)).

[61]*City of Seattle v. Mesiani*, 110 Wn.2d 454, 456, 755 P.2d 775 (1988) (citing *Gunwall*, 106 Wn.2d at 65; *State v. Stroud*, 106 Wn.2d 144, 148-52, 720 P.2d 436 (1986); *Myrick*, 102 Wn.2d at 510).

[62]*Russell*, 125 Wn.2d at 58 (citations omitted).

exceptions to the warrant requirement.[63] A search incident to arrest is one exception, based upon the need to prevent destruction of evidence and the need to locate weapons in the possession of the arrested person.[64] These exigencies are balanced against whatever privacy interests a person may have in the items in a vehicle if the vehicle the person occupied is searched incident to that person's arrest.[65] The state has the burden of proving a warrantless search falls under an exception to the warrant requirement.

Respondent argues the search of the sleeper and of the pouch found inside it was within the permissible scope of a search incident to arrest of Petitioner because it was a search only of the passenger compartment.

In *Stroud*, this court overruled in part its decision in *State v. Ringer* which required police officers to weigh the "totality of circumstances" surrounding an arrest and decide whether a warrantless search was permissible.[66] The court then announced a definitive rule for the permissible scope of a warrantless search of an automobile incident to an arrest under Constitution article I, section 7:

> During the arrest process, *including the time immediately subsequent to the suspect's being arrested, handcuffed, and placed in a patrol car, officers should be allowed to search the passenger compartment* of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.[67]

(Emphasis added.)

*Stroud* departs somewhat from the federal rule in *New*

---

[63]*State v. Chrisman*, 100 Wn.2d 814, 817, 676 P.2d 419 (1984).

[64]*Stroud*, 106 Wn.2d at 152.

[65]*Id.* at 152.

[66]*Id.* at 151.

[67]*Id.* at 152.

*York v. Belton*,[68] which permits search of all unlocked *and* locked containers found in the passenger compartment. But, as in *Belton*, though, *Stroud* clearly allows search of a vehicle's passenger compartment during or immediately after an arrest.

Petitioner claims the search of the sleeper was a search of his temporary residence, and not a search of the passenger compartment of the cab, because the sleeper was an area separately defined from the cab by a rubber boot. He asserts that, as his temporary residence or home, the sleeper is entitled to the highest degree of protection from intrusion under the United States and Washington Constitutions.

Only a curtain physically separated the cab from the sleeper in this case. Trooper Berends easily entered the sleeper which was located directly behind the driver's seat. At trial, defense witness John Leonard Brooks testified "You could access [the sleeper] from within the cab. There's a walk-through area *connected* by a rubber boot."[69] The rubber boot did not partition the cab from the sleeper.

One may argue that the sleeper is something like a home. But a sleeper in the passenger compartment of an over-the-road tractor-trailer is not really a home. Respondent correctly discerns that Petitioner asks the court to retreat from *Stroud* and return to the confusion of *Ringer*, where it was "virtually impossible for officers to decide whether . . . a warrantless search would be permissible."[70] In *Stroud*, this court emphasized the need for a definitive rule and observed that:

> A highly sophisticated set of rules . . . requiring the drawing of subtle nuances and hairline distinctions, may be the sort of heady stuff upon which the facile minds of lawyers and judges

[68] 453 U.S. 454, 460-61, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

[69] Verbatim Report of Proceedings, July 15, 1993, at 108 (emphasis added).

[70] *Stroud*, 106 Wn.2d at 151.

eagerly feed, but they may be "literally impossible of application by the officer in the field."[71]

Vehicles traveling on public highways are subject to broad regulations not applicable to fixed residences. This broad regulation does not afford Petitioner the same heightened privacy protection in the sleeper that he would have in a fixed residence or home. The reasoning of the Court of Appeals is sound:

> [W]hen a home is located in a vehicle, in such a way as to make it readily accessible from the passenger compartment, the safety of law enforcement officers and the need for a bright-line rule militate against prohibiting officers from searching a sleeping area which is readily accessible from the passenger compartment.[72]

Petitioner also argues the pouch found on the wall is indeed a "litter bag" and, as a trash receptacle, is protected from warrantless searches under *Boland*. In *Boland*, this court held that the state's warrantless search of the defendant's garbage in a receptacle outside his home was an unreasonable intrusion into his private affairs.[73] But in *State v. Fladebo*[74] we extended the *Stroud* rule, holding that all unlocked containers found inside the passenger compartment of a vehicle could be searched during, or soon after, custodial arrest of its occupant. In that case we concluded that the defendant's purse, found in the passenger compartment, was an unlocked container and thus subject to search.[75]

Petitioner's argument on the status of the sleeper as his private residence is without merit. Trooper Berends found

---

[71]*Id.* at 151 (quoting *New York v. Belton*, 453 U.S. at 458 (quoting Wayne R. LaFave, *"Case-by-Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma*, 1974 Sup. Ct. Rev. 127, 142)).

[72]*Johnson*, 77 Wn. App. at 447.

[73]*Boland*, 106 Wn.2d at 578.

[74]113 Wn.2d 388, 779 P.2d 707 (1989).

[75]*See id.* at 395.

an *open unlocked unfastened bag or pouch* hanging on the wall of the sleeper behind the driver's seat. Inside the open container he found controlled substances (drugs) and drug paraphernalia. His search of the bag or pouch constituted search of an unlocked container, which is permissible under both *Stroud* and *Fladebo*. Nothing in the record supports Petitioner's claim the container was merely a "litter bag," although it might generally be described as an automotive litter bag. In fact, Trooper Berends described it as a "leather like, litter bag type pouch."[76] There is no evidence the container was in fact used as a garbage, trash or litter receptacle. We thus conclude Trooper Berends' search of the bag or pouch was lawful under *Fladebo* and *Stroud*. *Boland* is not applicable to this case.

## Fourth Amendment

Petitioner contends search of the sleeper violated the Fourth Amendment of the United States Constitution, and thus the items seized should have been suppressed as fruit of an illegal search. He contends the sleeper is not part of the "passenger compartment" but is more like a "temporary residence" which Trooper Berends illegally entered and searched without a warrant.[77]

Respondent State argues that the search of the sleeper was permissible under the Fourth Amendment because it fell within the permissible scope of a search incident to an arrest.[78] Respondent also argues that the sleeper is not a temporary residence, but is instead an integral part of the

---

[76]Verbatim Report of Proceedings, July 15, 1993, at 31.

[77]Br. of Appellant at 8, 14. (Petitioner argues that since the only evidence of wrongdoing was the fruit of an illegal search, the judgment and sentence should be reversed and the case remanded for dismissal. *Id.* at 8.)

[78]Br. of Resp't at 3-4.

passenger compartment of a vehicle traveling upon the highways.[79]

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ."[80] To guard against unreasonable searches, government agents are generally required to obtain a warrant before conducting a search. The Fourth Amendment prohibits warrantless searches unless the search is justified under an established exception to the warrant requirement.[81] The government has the burden of proving a warrantless search falls under one of these exceptions.[82]

A search incident to arrest of a defendant is an established exception to the warrant requirement.[83] The scope of a search incident to a lawful arrest includes a search of the immediately surrounding area or the area within the "immediate control" of the person arrested.[84] The rationale for a search incident to an arrest rests upon the need to remove weapons which might be used by the person arrested and the need to prevent destruction or concealment of evidence.[85] In *New York v. Belton*,[86] the United States Supreme Court announced the proper scope of a search of an automobile incident to custodial arrest of its occupant:

> [W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the *passenger compartment* of that automobile.

[79]*Id.* at 6-7.

[80]U.S. CONST. amend. IV.

[81]*Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967).

[82]*See United States v. Jeffers*, 342 U.S. 48, 51, 72 S. Ct. 93, 96 L. Ed. 59 (1951).

[83]*Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969).

[84]*Id.* at 762-63.

[85]*Id.* at 763.

[86]453 U.S. 454, 460-61, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

> *It follows from this conclusion that the police may also examine the contents of any containers found within the passenger compartment, for if the passenger compartment is within reach of the arrestee, so also will containers in it be within his reach. Such a container may, of course, be searched whether it is open or closed, since the justification for the search is not that the arrestee has no privacy interest in the container, but that the lawful custodial arrest justifies the infringement of any privacy interest the arrestee may have.[87]*

(Emphasis added.)

In its decision, the Court emphasized the need for "a single familiar standard" to guide police officers who have limited time and expertise to reflect upon and balance the interests involved in specific circumstances confronting them.[88]

Federal courts of appeal have broadly interpreted the "passenger compartment" described in *Belton*.[89] The courts in *United States v. Rojo-Alvarez*,[90] *United States v. Doward*,[91] and *United States v. Russell*[92] concluded the hatch area of a hatchback automobile was part of the passenger compartment. The United States Court of Appeals for the Sixth Circuit in *United States v. Pino* concluded

---

[87]The Court noted its holding encompassed only the interior of the passenger compartment of an automobile and not the trunk. *Id.* at 461 n.4.

[88]*Id.* at 460 (quoting *Dunaway v. New York*, 442 U.S. 200, 213, 99 S. Ct. 2248, 60 L. Ed. 2d 824 (1979)).

[89]*See United States v. Thompson*, 906 F.2d 1292, 1298 (8th Cir. 1990) (" 'Passenger compartment' has been interpreted broadly by most courts . . . and generally includes whatever area is within a passenger's reach."); *United States v. Veras*, 51 F.3d 1365, 1371-72 (7th Cir. 1995) (the passenger compartment includes secret compartment in back seat area); *United States v. Chapman*, 954 F.2d 1352, 1358 n.6 (7th Cir. 1992) (holding the rear area of a truck and duffel bag found in it functioned as a passenger compartment of the vehicle).

[90]944 F.2d 959, 970 (1st Cir. 1990).

[91]41 F.3d 789, 793 (1st Cir. 1994), *cert. denied*, 115 S. Ct. 1716, 131 L. Ed. 2d 575 (1995). *But see United States v. McNab*, 775 F. Supp. 1 (D.D.C. 1991).

[92]670 F.2d 323, 326 (D.C. Cir.), *cert. denied*, 457 U.S. 1108 (1982).

the rear section of a midsized station wagon was part of the passenger compartment.[93]

In *Doward, Pino* and *Russell*, the courts relied upon Professor Wayne R. LaFave's proposed rule that a passenger compartment includes "all space reachable without exiting the vehicle, without regard to the likelihood in the particular case that such a reaching was possible."[94]

In this case, Trooper Berends arrested Petitioner on the bench warrant, handcuffed him, searched him, and then placed him in the patrol car. A few minutes later, he entered the driver's door and searched the cab of the tractor-trailer Petitioner was driving. He easily entered the sleeper from the inside because it was immediately behind the driver's seat. Only a curtain separated the sleeper from the cab. The sleeper was not a separate, closed compartment area like the trailer section of the tractor-trailer[95] or the trunk of an automobile. The sleeper compartment of the cab, as is the hatch area of a hatchback or the rear section of a station wagon, is a "space reachable without exiting the vehicle."[96] But Petitioner claims the sleeper is not merely a section of the passenger compartment, but is instead a temporary residence much like a hotel room or a motor home. He relies only upon a statement by a defense witness who said the sleeper was like a trucker's "home away from home."

The Supreme Court has held that the privacy interests of persons traveling in vehicles upon public thoroughfares are substantially less than those that attach to *fixed* dwell-

---

[93]855 F.2d 357, 364 (6th Cir. 1988), *cert. denied,* 493 U.S. 1090, 110 S. Ct. 1160, 107 L. Ed. 2d 1063 (1990).

[94]3 WAYNE R. LaFAVE, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 7.1(c), at 16-17 (2d ed. 1987).

[95]*See United States v. Hernandez,* 901 F.2d 1217, 1220 (5th Cir. 1990) (search incident to arrest of occupant of tractor-trailer did not give officers the right to search the trailer which was a separate, closed compartment area).

[96]3 LaFAVE, *supra,* at 17.

ings.[97] This diminishment of privacy interests is due to the law enforcement exigency created by the ready mobility of vehicles[98] and governmental interests in ensuring safe travel, as evidenced in the broad regulation of most forms of transportation.[99]

Comporting with the rationale of lessened privacy interests for persons traveling on public highways, lower federal courts have held that privacy interests of occupants in sleeping compartments on trains are less than privacy interests in their fixed dwellings.[100] Sleeping compartments on trains are closely analogous to sleepers in the cabs of tractor-trailers.

In *California v. Carney*, the Supreme Court held that search of a motor home parked in a public place fell within the scope of the "automobile exception" to the warrant requirement.[101] The Court explained that governmental interest in promoting safe and efficient public transportation "necessarily lead[s] to reduced expectations of privacy."[102] Because the motor home was readily mobile and subject to broad regulations inapplicable to fixed dwellings, "the overriding societal interests in effective law enforcement justif[ied] an immediate search before the vehicle and its occupants [became] unavailable."[103]

Petitioner, however, claims the decision in *Carney* supports his argument that the *Belton* rule, which permits a warrantless search of the "passenger compartment" of a

---

[97]*Carroll v. United States*, 267 U.S. 132, 153, 45 S. Ct. 280, 69 L. Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S. Ct. 1975, 26 L. Ed. 2d 419 (1970); *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982); *California v. Carney*, 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985).

[98]*Ross*, 456 U.S. at 806-07.

[99]*See Carney*, 471 U.S. at 392.

[100]*United States v. Whitehead*, 849 F.2d 849, 855 (4th Cir.) ("Sleeping compartments simply are not homes on rails."), *cert. denied*, 488 U.S. 983 (1988); *United States v. Savage*, 889 F.2d 1113, 1118 (D.C. Cir. 1989).

[101]*Carney*, 471 U.S. at 390-93.

[102]*Id.* at 392.

[103]*Id.* at 393.

vehicle incident to the lawful arrest of its occupants, does not apply to searches of those areas of the vehicle used for residential purposes.[104] The search of the motor home in *Carney* was upheld under the motor vehicle exception to the warrant requirement.[105] But Petitioner argues that because the Supreme Court in *Carney* did not use the *Belton* rule to uphold the search, it decided by implication that *Belton* does not apply to searches of those areas of vehicles used for residential purposes.

Petitioner's argument is without merit. He correctly recognizes that courts have upheld warrantless searches of mobile living quarters under the motor vehicle exception, or because they found consent, exigent circumstances or probable cause to search the whole vehicle.[106] But he cites no authority to support a conclusion that *Belton* does not apply to motor homes,[107] campers or sleepers in the cabs of tractor-trailers. Nor does he establish that a sleeper in the cab of a tractor-trailer is a "residence."

Under the Fourth Amendment, case law supports a conclusion that the sleeper in the cab of the tractor-trailer in this case is part of the "passenger compartment." Persons traveling on public highways have lessened privacy interests because of the government's interest in ensuring safe and efficient transportation. Additionally, the operation of over-the-road tractor-trailers on the public highways requires heightened control of drivers of that

---

[104]Br. of Appellant at 12-14; Reply Br. of Appellant at 4-9. Petitioner also relies heavily upon *United States v. Sharpe*, 470 U.S. 675, 105 S. Ct. 1568, 84 L. Ed. 2d 605 (1985) for this argument. Reply Br. of Appellant at 8-9.

[105]*Carney*, 471 U.S. at 392-94.

[106]*See United States v. Gilbert*, 774 F.2d 962, 964 (9th Cir. 1985) (implied consent found to search bedroom in mobile home); *United States v. Markham*, 844 F.2d 366, 369 (6th Cir. 1988) (search of motor home valid under automobile exception).

[107]As observed by the United States Court of Appeals for the Eleventh Circuit in a recent decision: "The law regarding whether to apply to motor homes the established search and seizure principles applicable to motor vehicles, or those applicable to fixed places of residence has not been developed." *United States v. Adams*, 46 F.3d 1080, 1081 (11th Cir. 1995).

type of equipment in order to promote increased safety for all users of the highways.

### Admissibility of Evidence

Petitioner contends the trial court erred in not admitting into evidence the Polaroid photographs, exhibits for identification 7, 8, and 9.[108] He argues the photographs "can be considered in resolving the appellate issues" presented,[109] but then concedes that "[b]y examining Exhibit 12, this court can obtain a visual depiction of the subject of this litigation."[110]

 Exhibits for identification 7, 8, and 9, which were not admitted, are photographs of the exterior of a tractor-trailer at least similar to the one driven by Petitioner. Exhibit 12, which was admitted, is a manufacturer's brochure showing both the exterior and interior of the same model truck driven by Petitioner when Trooper Berends stopped him.[111] Petitioner does not contend the outcome of the trial was materially affected by the court's not admitting exhibits 7, 8, and 9. Respondent State correctly argues that any error by the trial court in not admitting those exhibits was harmless.[112] The trial court actually made no ruling on admissibility, but could have based rejection upon relevance, lack of foundation or cumulativeness.[113]

---

[108]Br. of Appellant at 25. (The trial court did not rule on the admissibility of exhibits 7, 8, and 9.)

[109]Br. of Appellant at 26.

[110]Reply Br. of Appellant at 14-15.

[111]See Verbatim Report of Proceedings, July 15, 1993, at 104, 108-09. The brochure depicts the features available in a Peterbilt Model 379, and each tractor-trailer ordered may vary, depending on the buyer's specifications. Page 1 of exhibit 12 shows the exterior of the tractor-trailer. Page 2 shows a sleeper substantially similar to the one in the tractor-trailer Petitioner was driving, except Petitioner's sleeper had a single bunk instead of a double one and did not have wood grained boxes nor a stand-up roof. See Verbatim Report of Proceedings, July 15, 1993, at 111-12.

[112]See State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986).

[113]See ER 401, 402 and 403.

Offer of the photographs was not renewed. There was thus no objection and no ruling. Besides, photographs of the exterior of a tractor-trailer had little relevance, if any, to the question of authority to search a sleeper located inside the cab.

## SUMMARY AND CONCLUSIONS

When a party claims a violation of rights under both the Washington and United States Constitutions, this court first examines the state constitutional claim, following the principles announced in *State v. Gunwall.*

Under Washington Constitution article I, section 7, *State v. Stroud*[114] held that during a warrantless search of an automobile incident to arrest, officers may search the passenger compartment, but may not search any locked containers found inside the compartment. In that case we announced a definitive rule for law enforcement officers to follow during warrantless searches. *State v. Fladebo*[115] clarified the *Stroud* rule and held that any unlocked containers found in the passenger compartment may be searched.

Trooper Berends' search of the open unlocked container found in the sleeper compartment of the cab was a permissible search under *Fladebo* and *Stroud.* It was not merely the search of a litter bag or trash receptacle. *State v. Boland*,[116] relating to search of a garbage receptacle outside a residence, is not applicable to the facts in this case. The broad regulation of vehicles traveling upon our public highways does not afford Petitioner the same heightened privacy protection in the sleeper that he would have in a fixed residence.

The Court of Appeals was correct in its decision concluding that search of a sleeping compartment readily acces-

[114]106 Wn.2d 144.

[115]113 Wn.2d 388.

[116]115 Wn.2d 571.

sible from the passenger compartment of an over-the-road tractor-trailer is within the lawful scope of a search incident to arrest of its driver.

Under the Fourth Amendment, *New York v. Belton*[117] permits search of *all* containers found in the passenger compartment of a vehicle during a search incident to arrest. Some federal courts of appeal have broadly interpreted "passenger compartment" to include all space reachable without leaving the vehicle. Case law following *Belton* supports a conclusion that the sleeper in this case was part of the passenger compartment of the cab. The sleeper was directly behind the driver's seat and readily accessible without leaving the cab. Persons traveling on public highways have lessened privacy interests than in their homes or residences because of the government's interest in ensuring safe and efficient transportation. Following this policy, lower federal courts have found that sleeping compartments in trains, closely analogous to the sleeper here, are not homes or temporary residences. The sleeper in the cab of a tractor-trailer is neither a home nor a residence.

Any error by the trial court in not ruling on admissibility of the Polaroid photographs, exhibits for identification 7, 8, and 9, was harmless. The outcome of the trial was not materially affected by it. Offer of the photographs was not renewed, there was no objection and there was no ruling. This seems to have been an oversight. At any rate, the trial court could have excluded the photographs, if offered, upon objection for relevance, lack of foundation or cumulativeness under ER 401, 402 and 403.

We affirm the decision of the Court of Appeals, Division Three, which affirmed Petitioner Dennis M. Johnson's conviction for possession of a controlled substance, methamphetamine, in the Yakima County Superior Court and the trial court's ruling which denied his motion to suppress evidence found in the sleeping compartment of

---

[117]453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

the cab of the tractor-trailer he was driving upon an interstate highway.

DURHAM, C.J., DOLLIVER, GUY, MADSEN, and TALMADGE, JJ., and PEKELIS, J. Pro Tem., concur.

ALEXANDER, J. (concurring) — I concur specially because I am concerned that the majority gives *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986) a broader application than it deserves. The opinion appears to suggest that if a vehicle is not a "fixed residence," then *any area* within the vehicle that is readily *accessible from* the passenger compartment, except for locked containers, may be searched incident to a lawful arrest. Majority at 449. *Stroud* does not go that far. It merely stands for the proposition that the "passenger compartment of a vehicle" may be searched during the time immediately subsequent to the arrest of the suspect. *Stroud*, 106 Wn.2d at 152.

I am satisfied, though, that the trial court correctly concluded here that the sleeping quarters in the cab of the Defendant's truck were part of the passenger compartment of the vehicle, as opposed to being merely an area accessible from the passenger compartment. Such a conclusion might not, however, be supportable in another case where a vehicle contains living quarters that are separate and distinct from the portion of the vehicle where the driver and passengers would ordinarily be located. In such a circumstance, the twofold rationale articulated in *Stroud* would not support a conclusion that a warrantless search of living quarters in a vehicle is justified.[118]

While I recognize, as the majority suggests, that bright-line rules such as the rule in *Stroud* make the police officer's job easier, we should not give the rule such broad

---

[118]In *Stroud*, we said that a warrantless search of certain areas within a vehicle was not justified where either (1) the occupant had shown a reasonable expectation that the area was to remain private; or (2) there was little danger that the occupants could grab a weapon or destroy evidence located within the area. *See Stroud*, 106 Wn.2d at 152.

application that it totally submerges the protections our state's founders obviously had in mind when they adopted article I, section 7 of our state constitution.

JOHNSON, J., concurs with ALEXANDER, J.