[No. 27826-0-II.   Division Two.   December 6, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. ADAM NELSON CRAIG, *Appellant*.

*John L. Cross* (of *Ronald D. Ness & Associates*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Randall A. Sutton, Deputy*, for respondent.

HUNT, C.J. — Adam Nelson Craig appeals his conviction for unlawful possession of methamphetamine discovered on his person during a search incident to arrest for third degree driving with a suspended license. Craig contends that the search incident to arrest was unlawful because his initial driving with a suspended license arrest was "noncustodial" based on the Poulsbo Police Department's policy of booking and releasing driving violation arrestees, which he also challenges. Holding that *McKenna*[1] does not apply, we affirm.

## FACTS

### I. ADMINISTRATIVE BOOKING PROCEDURE

In September 1999, the Poulsbo Police Department instituted an administrative booking policy to help alleviate crowding in the Kitsap County Jail. Under the policy, subjects arrested for criminal driver's license violations are (1) handcuffed and taken into custody, (2) transported to the local police department instead of the county jail, (3) photographed and/or fingerprinted, (4) given a citation with a court date, and (5) released with no bail having been set. Sometimes the arresting officer detains the arrestee in a holding cell while the officer prepares the camera and fingerprinting equipment.

The Poulsbo Police Department sergeant who instituted the policy testified that administrative booking is necessary to prevent false identifications and arrests. He also stated that a person arrested for driving without a license is put through the same procedure at the police station as at the county jail.

### II. CUSTODIAL ARREST

On June 13, 2001, a Poulsbo police officer on patrol stopped Craig's vehicle because Craig, the vehicle's regis-

---

[1] *State v. McKenna*, 91 Wn. App. 554, 561, 958 P.2d 1017 (1998).

tered owner, had a suspended driver's license. After confirming Craig's identity, the officer arrested Craig for driving with a suspended license (DWLS), handcuffed him, and searched him in preparation for transport in a patrol vehicle to the police department for an administrative booking.

In the course of the search, the officer found methamphetamine in Craig's jacket pocket. The officer arrested Craig for unlawful possession of a controlled substance and transported him instead to the Kitsap County Jail, where he was booked and released.

### III. PROCEDURE

The State charged Craig with unlawful possession of a controlled substance. Craig filed a motion to suppress the methamphetamine found in his pocket during the search. The trial court denied Craig's motion, concluding that the search was incident to a lawful custodial arrest, and convicted Craig on stipulated facts.

### ANALYSIS

#### I. CUSTODIAL ARREST

Craig contends that the trial court erred by denying his motion to suppress because he was not under custodial arrest when the officer searched his person.

■■ A police officer having probable cause to believe that a person has violated certain traffic laws, here RCW 46.20.342,[2] has authority to arrest that person. RCW 10.31.100(3)(e).[3] *See also* RCW 46.20.349.[4] Searches inci-

---

[2] "(1) It is unlawful for any person to drive a motor vehicle in this state while that person is in a suspended or revoked status or when his or her privilege to drive is suspended or revoked in this or any other state...." RCW 46.20.342(1).

[3] RCW 10.31.100.

(3) Any police officer having probable cause to believe that a person has committed or is committing a violation of any of the following traffic laws shall have the authority to arrest the person:

dent to a lawful custodial[5] arrest are lawful under a recognized exception to the warrant requirement,[6] even under the greater protection provided by article I, section 7 of the Washington Constitution.[7] *State v. Johnson*, 128 Wn.2d 431, 447, 909 P.2d 293 (1996).

Here, the officer had lawful authority to place Craig under arrest for driving with a suspended license. RCW 10.31.100(3)(e). Thus, the search incident to the arrest was lawful if the arrest was "custodial."

Craig argues that his DWLS arrest was noncustodial because the police officer did not intend to keep him in jail; rather, the police merely used the administrative jail booking procedure as a way to circumvent our holding in *State v. McKenna*, 91 Wn. App. 554. In *McKenna*, we distinguished between custodial and noncustodial arrests, holding that an officer may not search incident to a noncustodial arrest. 91 Wn. App. at 561. The majority reasoned that the search of McKenna was incident to a "noncustodial arrest" because (1) the officers knew the jail was overcrowded and initially did not intend to take McKenna into custody, despite an outstanding arrest warrant, (2) the officers did not manifest an intention to arrest McKenna and to take her into custody for driving without a valid license, and (3) the

. . . .

(e) RCW 46.20.342, relating to driving a motor vehicle while operator's license is suspended or revoked . . . .

[4] RCW 46.20.349 reads:

Any police officer who has received notice of the suspension or revocation of a driver's license from the department of licensing, may, during the reported period of such suspension or revocation, stop any motor vehicle identified by its vehicle license number as being registered to the person whose driver's license has been suspended or revoked. The driver of such vehicle shall display his driver's license upon request of the police officer.

[5] An officer may not search incident to a *non*custodial arrest. *McKenna*, 91 Wn. App. at 561.

[6] Warrantless searches are presumed unreasonable. *State v. Parker*, 139 Wn.2d 486, 496, 987 P.2d 73 (1999). Unreasonable searches and seizures are unlawful. U.S. CONST. amend. IV.

[7] Wash. Const. art. I, § 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law."

officers announced that McKenna was released and free to go before frisking her for weapons as a condition of giving her a ride home in the police car. *McKenna*, 91 Wn. App. at 563.

■ In contrast, here, as soon as the officer verified that Craig was the driver, the officer intended and acted to arrest Craig for DWLS, to take him into custody, and to transport him to the Poulsbo Police Department. The officer manifested his intent to arrest Craig by telling him that he was under arrest and placing him in handcuffs. Unlike in *McKenna*, the officer here never told Craig that he was free to leave before searching him incident to the arrest.

■ Craig next argues that because his intended detention at the Poulsbo Police Department was not subject to bail, his arrest was noncustodial. But he offers no case law to support this definition of custodial arrest.[8] The State counters that an arrest is custodial when the defendant is handcuffed and placed in a patrol vehicle for transport, citing *State v. Gonzales*, 46 Wn. App. 388, 396, 731 P.2d 1101 (1986).[9] We agree.

Recently, we distinguished *McKenna* in a case factually similar to the one here. *State v. Clausen*, 113 Wn. App. 657, 56 P.3d 587 (2002). As in *McKenna* and the case here, overcrowding in the county jail had caused the jail to refuse to book and to hold persons arrested for nonviolent misdemeanors. Nonetheless, we held that

---

[8] Craig cites a law review article that advocates a clear distinction between custodial and noncustodial arrests. The article reasons that involuntary transportation from the scene is sufficient, but not necessary, to establish custodial arrest. For instance, a defendant has been subjected to a custodial arrest if a reasonable person in his position would have believed that he was about to be involuntarily transported. David A. Moran, *Traffic Stops, Littering Tickets, and Police Warnings: The Case for a Fourth Amendment Non-Custodial Arrest Doctrine*, 37 AM. CRIM. L. REV. 1143, 1161 (2000).

This article, however, does not support Craig's definition of custodial arrest because a reasonable person who has been told that he is under arrest and placed in handcuffs would believe that he was about to be involuntarily transported.

[9] The judge in *Gonzales* held that handcuffing and transporting the defendant from the scene turned the detention into an arrest.

unlike the officer in *McKenna*, here Parker clearly manifested his intent to place Clausen under custodial arrest when he told Clausen that he was under arrest and that he would be released *after* he was booked.

*Clausen*, 113 Wn. App. at 661. We also held that "[a]lthough the definition of 'custodial arrest' is not precise," the record showed that Clausen was "under custodial arrest at the time of the search" and, therefore, the search was valid as incident to arrest.[10] *Clausen*, 113 Wn. App. at 661.

*Clausen* directly applies here: The officer placed Craig under arrest, handcuffed him, and performed a search before securing him in the patrol car for transport to the jail for booking. Thus, under *Clausen*, Craig's arrest was custodial, the search incident to his arrest was lawful, and the trial court properly denied Craig's motion to suppress.

## II. ADMINISTRATIVE BOOKING POLICY

Craig next argues that his arrest was noncustodial because the policy underlying the reasonableness of an officer's right to search incident to a lawful arrest did not exist in his situation. Again, we disagree.

*Clausen* involved a similar, though less formal, booking arrangement as a result of county jail overcrowding. The arresting officer was "generally aware that the jail had not been booking detainees charged with nonviolent misdemeanors," and the officer told Clausen while initially placing him under arrest that "they were going to impound his vehicle, book him, and then release him." *Clausen*, 113 Wn. App. at 660. The more formal administrative booking procedure involved here, nonetheless resulted in an analogous sequence of events.

---

[10] *See also State v. O'Neill*, 110 Wn. App. 604, 610, 43 P.3d 522 (2002), in which Division Three of this court similarly held that a defendant was in custody when the deputy told him he was under arrest, handcuffed him, and placed him in the back of a patrol car. The court looked to the following definition of seizure: "[A] seizure occurs when a person submits to a show of authority or is physically touched by an officer." *O'Neill*, 110 Wn. App. at 610.

Although Clausen did not directly challenge the legitimacy of the book and release procedure, our holding guides our decision here. As we held in *Clausen*, that the arresting officer ultimately intends to release a person arrested for a nonviolent misdemeanor after booking does not defeat that person's custodial status at the time of the search incident to arrest. Again distinguishing *McKenna*,

> We did not hold [in *McKenna*] that the jail's status in any way affected the officer's authority to place the defendant under custodial arrest or that a search prior to the defendant's release was invalid.

*Clausen*, 113 Wn. App. at 660-61.

Applying *Clausen*'s rationale to the case here, we reject Craig's invitation to extend *McKenna* by defining "custodial arrest" as an arrest where the defendant cannot obtain release unless he or she posts bail.[11]

Affirmed.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.

---

[11] In Judge Jay B. Roof's ruling on the evidentiary issue prior to trial, he voiced concern that a person's constitutional rights depend on whether the lawful stop occurs in a county with a crowded jail. He also encouraged and requested that the constitutional issue go directly to the Supreme Court. Nonetheless, Craig's brief does not raise the Equal Protection issue; rather, he argues that the Poulsbo Police Department created the booking policy solely for the purpose of avoiding the restrictions imposed in *McKenna*. Judge Roof ruled that the Kitsap County Prosecutor and Poulsbo Police Department had a right to create the booking policy because the executive branch can make corrections to procedures if the old procedures are ruled constitutionally defective by the judicial branch. Moreover, Craig did not provide any evidence that the Poulsbo Police Department uses the booking policy to search some individuals arrested for driving violations and not others.