[No. 26402-5-III.   Division Three.   June 10, 2008.]

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY ALLEN VANDERPOOL, *Appellant*.

*Dennis W. Morgan*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Julie E. Long* and *Alexander B. Johnson, Deputies*, for respondent.

¶1 SWEENEY, J. — This appeal follows the trial judge's refusal to suppress drug evidence seized from the defendant, Timothy Vanderpool. The court relied on RCW 46-.20.349 (conferring the right to stop a car if the registered owner's license is suspended). And the parties here on appeal argue over whether that statute is applicable. It is not. But the officer could legally ask Mr. Vanderpool for identification. That was not a seizure. And the officer had probable cause to arrest Mr. Vanderpool when he volunteered that he did not have a driver's license, as he handed the officer his identification card. We, then, affirm the trial judge's refusal to suppress the drug evidence and Mr. Vanderpool's conviction.

## FACTS

¶2 Timothy Vanderpool drove a blue Ford Explorer through the parking lot of an apartment complex. A police officer ran a driver's license check on the car. The car was registered to Misty Schneider.

¶3 The police officer thought Mr. Vanderpool was Misty Schneider's husband, James Schneider. The officer ran a

license check on him and discovered that Mr. Schneider's license had been suspended. The officer had never seen Mr. Schneider. But the driver's license check included his physical description. The driver, Mr. Vanderpool, fit the description. And the officer knew that Mr. Schneider had driven his wife's car in the past. The officer assumed the driver was Mr. Schneider.

¶4 Mr. Vanderpool parked the car and walked toward the apartment complex. The officer parked his patrol car behind the Ford Explorer. The officer rolled down his window and asked Mr. Vanderpool if he was James Schneider. He said he was not and that his name was Timothy Vanderpool.

¶5 The police then asked him for identification to confirm his identity. Mr. Vanderpool gave the officer an identification card. And he told the officer that he did not have a driver's license.

¶6 The officer ran a driver's license check on Mr. Vanderpool and found that his license had been suspended. The officer arrested Mr. Vanderpool for driving with a suspended license. He found methamphetamine in his search incident to that arrest. Mr. Vanderpool moved to suppress the drug evidence. The court denied the motion.

¶7 Mr. Vanderpool and the State stipulated to the facts of the case. The judge found Mr. Vanderpool guilty of unlawful possession of a controlled substance, methamphetamine, based on those facts.

## DISCUSSION

¶8 Mr. Vanderpool contends that the officer did not have the legal authority to stop him and specifically that RCW 46.20.349 (conferring the right to stop a car if the registered owner's license is suspended) provided no authority to stop him.

¶9 The State responds that RCW 46.20.349 provided the necessary authority for the officer to stop Mr. Vanderpool,

and the trial court therefore correctly denied the motion to suppress the drug evidence.

¶10 Mr. Vanderpool does not assign error to the court's findings of fact and we therefore accept them as true on appeal. *State v. Acrey*, 148 Wn.2d 738, 745, 64 P.3d 594 (2003). The question is then one of law: did the police have the legal authority to stop and detain Mr. Vanderpool?

¶11 The trial court concluded that RCW 46.20.349 gave the officer the authority to "contact" Mr. Vanderpool. RCW 46.20.349 gives police authority to "stop any motor vehicle identified by its vehicle license number as being registered to the person whose driver's license has been suspended or revoked." But Mr. Vanderpool had parked the car and was walking away from it when the officer contacted him. Clerk's Papers (CP) at 20 (Finding of Fact 8). So the statute is not applicable and did not justify the officer's contact. RCW 46.20.349. The statute is irrelevant here.

¶12 Nonetheless, the court's findings and conclusions easily support its refusal to suppress the drug evidence. And we can affirm the judgment on any alternative legal basis supported by the record. *Bock v. Bd. of Pilotage Comm'rs*, 91 Wn.2d 94, 95 n.1, 586 P.2d 1173 (1978); RAP 12.2.

¶13 Here, the officer simply asked Mr. Vanderpool for identification to verify that he was not James Schneider. That is not a seizure. *State v. Crane*, 105 Wn. App. 301, 309, 19 P.3d 1100 (2001), *overruled on other grounds by State v. O'Neill*, 148 Wn.2d 564, 62 P.3d 489 (2003). The officer was in a public place, as was Mr. Vanderpool. Mr. Vanderpool may not have had to respond but did and volunteered that he did not have a driver's license. CP at 21 (Finding of Fact 12).

¶14 At that point, the officer knew and therefore had probable cause to conclude that Mr. Vanderpool was driving without a license and that is a ground to arrest him. *State v. Pacas*, 130 Wn. App. 446, 449, 123 P.3d 130 (2005); *State v. Craig*, 115 Wn. App. 191, 195, 61 P.3d 340 (2002). The

officer had just seen Mr. Vanderpool driving Ms. Schneider's car.

¶15 These findings support the trial court's conclusion that the officer's conduct was legally appropriate. CP at 22 (Conclusion of Law 2, 3). The officer had probable cause to arrest Mr. Vanderpool for driving without a valid license. The court correctly concluded that the arrest was valid. CP at 22 (Conclusion of Law 3). And the evidence was properly seized pursuant to that valid arrest. *Craig,* 115 Wn. App. at 195.

¶16 We therefore affirm the trial judge's decision to suppress the evidence. And we also affirm Mr. Vanderpool's conviction.

BROWN and KORSMO, JJ., concur.