[No. 42599-4-I.    Division One.    August 30, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTINA
VRIELING, *Appellant*.

*Oliver R. Davis*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Karen L. Rogers, Deputy*, for respondent.

WEBSTER, J. — The primary issue on appeal is whether, under article I, section 7 of the Washington Constitution, an officer may search the living quarters of a motor home as a search incident to the arrest of the driver. We conclude that under *State v. Johnson*, 128 Wn.2d 431, 909 P.2d 293 (1996), a search of the motor home's living quarters is permissible, where such quarters are readily accessible from the passenger compartment. We further conclude that the search of the zipped cushion was permissible under the bright-line rule of *State v. Stroud*, 106 Wn.2d 144, 720 P.2d 436 (1986). We affirm.

## FACTS

The following facts are undisputed:[1]

On July 29, 1997, police dispatch reported that a vehicle prowl had just occurred in the parking lot of a store. Dispatch provided a description of the suspects and the vehicle (a white Winnebago), as well as the Winnebago's license plate number. Deputy Cervarich spotted the reported Winnebago, which had swerved over the fog line and was driving well under the speed limit. Appellant Christina Vrieling was later identified as the driver of the Winnebago, with her husband in the passenger seat.

When Cervarich stopped the Winnebago and asked for

---

[1]The parties had stipulated to the facts contained in the police reports for purposes of the suppression hearing. The trial court adopted the police reports and clarified two additional undisputed facts in its findings. Because these facts remain unchallenged, they are considered verities on appeal. *See State v. Hill*, 123 Wn.2d 641, 644, 870 P.2d 313 (1994).

identification, Vrieling did not produce one. Instead, she gave a false name with two different birth dates; neither combination could be found in Cervarich's computer check of Washington, Montana, and Colorado. Faced with an unverifiable identification, Cervarich effected a full custodial arrest of Vrieling for driving without a valid license and placed her in the patrol car.[2]

Cervarich then had Vrieling's husband step out of the Winnebago while he searched the interior. Cervarich unzipped a seat cushion found at the back of the Winnebago.[3] Inside the cushion, he discovered a fully loaded pistol, together with a second full clip or magazine.

Dispatch informed Cervarich that the pistol had been reported stolen, at which time Cervarich arrested Vrieling's husband for possession of a stolen firearm. At the police station, Vrieling told Deputy Hawkins that the gun was actually hers (not her husband's), and that she used it for target practice. After Vrieling finally admitted her true identity, it was discovered that she had a previous felony conviction. She was charged with second degree unlawful possession of a firearm.

The trial court denied Vrieling's motion to suppress evidence of the gun. Following a jury trial, Vrieling was convicted as charged. She received a sentence of four months' confinement. She appeals, arguing that under the state constitution, (1) a search of the living quarters of a motor home is impermissible as a search incident to arrest, and (2) even if such a search is permissible, the officer

---

[2]Vrieling challenges neither the initial stop nor the custodial arrest. *See State v. Quintero-Quintero*, 60 Wn. App. 902, 904, 808 P.2d 183 (1991) (if the traffic violation does not fall within RCW 10.31.100(3), a custodial arrest may be made if the officer has reasonable grounds to believe the driver will not respond to a citation).

[3]Deputy Cervarich testified at trial that there was a bench with seat cushions at the back of the Winnebago. He stated that he unzipped one of the cushions after he had felt it and noticed that it contained a hard object. In its findings, the trial court clarified that Cervarich did not damage or tear the cushion when he found the gun.

exceeded the scope of the search by unzipping the seat cushion.

## DISCUSSION
### A. Search Incident to Arrest: The Motor Home

■ Vrieling appeals the denial of her motion to suppress, challenging the search of the motor home on state constitutional grounds only.[4] Article I, section 7 of the Washington Constitution provides that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. art. I, § 7. Under both the Fourth Amendment[5] and article I, section 7, a warrantless search is per se unreasonable unless it falls within one of the exceptions to the warrant requirement. *Johnson*, 128 Wn.2d at 446-47. The State bears the burden of proving that a warrantless search falls under one of these exceptions. *Id.* at 447.

■ One such exception is a search incident to arrest, "based upon the need to prevent destruction of evidence and the need to locate weapons in the possession of the arrested person." *Id.* The State contends that this exception applies in our case, relying on *Stroud*, 106 Wn.2d 144, and *Johnson*, 128 Wn.2d 431.

In *Stroud*, our Supreme Court announced a "bright-line" rule under article I, section 7, defining the permissible scope of a warrantless automobile search incident to arrest:

> During the arrest process, including the time immediately subsequent to the suspect's being arrested, handcuffed, and

---

[4]Vrieling has briefed the factors of *State v. Gunwall*, 106 Wn.2d 54, 61-62, 720 P.2d 808 (1986), arguing that under the heightened protection of article I, section 7 of the Washington Constitution, an officer exceeds the scope of a warrantless automobile search incident to arrest by searching the living quarters of a motor home. But because we conclude that our case is controlled by *State v. Johnson*, 128 Wn.2d 431, 443-50, 909 P.2d 293 (1996), where the Supreme Court examined this issue under article I, section 7 pursuant to a *Gunwall* analysis, we need not again engage in such a discussion.

[5]The Fourth Amendment states: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ." U.S. CONST. amend. IV.

placed in a patrol car, officers should be allowed to search the passenger compartment of a vehicle for weapons or destructible evidence. However, if the officers encounter a locked container or locked glove compartment, they may not unlock and search either container without obtaining a warrant.

106 Wn.2d at 152. In so holding, the *Stroud* court found that the heightened protection of article I, section 7 required Washington to diverge from the federal rule enunciated in *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981),[6] and thus limited the permissible search to *unlocked* containers and *unlocked* glove compartments. *Id.* at 148-53.

█ The parties do not dispute that the Winnebago in question was a motor vehicle[7] and was being used as a vehicle at the time of the stop and arrest. Rather, the inquiry posed by Vrieling is whether *Stroud* applies to a motor home. We conclude that it does, under the Supreme Court's decision in *Johnson*, 128 Wn.2d 431.

There, the court was faced with the question of whether a search of the sleeping compartment in the cab of a tractor-trailer was permissible as a search incident to the arrest of the driver. *Id.* at 434. The sleeper contained a bed and a clothes closet, and was accessible to the cab by an open portal or " 'walk-through area connected by a rubber boot.' " *Id.* at 436. A curtain could be drawn to separate the cab from the sleeper. *Id.*

The court upheld the search under both state and federal constitutional grounds. In analyzing the issue under article I, section 7, the court rejected the argument that the sleeper was a temporary residence or home entitled to the

---

[6]The United States Supreme Court deemed permissible the warrantless vehicle search of the passenger compartment and any containers within it during a search incident to arrest. *New York v. Belton*, 453 U.S. 454, 460-61, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981).

[7]Washington's motor vehicles statute defines "motor vehicle" as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails." RCW 46.04.320.

same protections as a fixed residence. *Id.* at 448-49. Instead, the court found that "a sleeper in the passenger compartment of an over-the-road tractor-trailer is not really a home," and furthermore, articulated a bright-line rule applicable to homes located in vehicles:

> One may argue that the sleeper is something like a home. But a sleeper in the passenger compartment of an over-the-road tractor-trailer is not really a home. Respondent correctly discerns that Petitioner asks the court to retreat from *Stroud* and return to the confusion of [*State v. Ringer*, 100 Wn.2d 686, 674 P.2d 1240 (1983)], where it was 'virtually impossible for officers to decide whether . . . a warrantless search would be permissible.'
>
> . . . .
>
> *Vehicles traveling on public highways are subject to broad regulations not applicable to fixed residences. This broad regulation does not afford Petitioner the same heightened privacy protection in the sleeper that he would have in a fixed residence or home. The reasoning of the Court of Appeals is sound:*
>
>> *[W]hen a home is located in a vehicle, in such a way as to make it readily accessible from the passenger compartment, the safety of law enforcement officers and the need for a bright-line rule militate against prohibiting officers from searching a sleeping area which is readily accessible from the passenger compartment.*

*Id.* at 448-49 (footnotes omitted) (quoting *State v. Johnson*, 77 Wn. App. 441, 447, 892 P.2d 106 (1995), *aff'd*, 128 Wn.2d 431) (emphasis added).

Thus, although the Supreme Court noted that a sleeping compartment is "not really a home"—which arguably could distinguish our case from *Johnson*[8]—the court proceeded to adopt this court's distinction between "homes that are

---

[8]Washington's motor vehicles statute defines "motor homes" as "motor vehicles originally designed, reconstructed, or permanently altered to provide facilities for human habitation, which include lodging and cooking or sewage disposal, and is enclosed within a solid body shell with the vehicle, but excludes a camper or like unit constructed separately and affixed to a motor vehicle." RCW

located in vehicles" and "homes that are *fixed* residences."
The court clearly reaffirmed the need for a definitive rule
based on *Stroud,* lest we retreat to the confusion of a case-
by-case *Ringer* analysis.[9]

We therefore conclude that under *Johnson,* the inquiry is
whether the home is located in a vehicle "in such a way as
to make it readily accessible from the passenger compart-
ment." In other words, so long as the home is located in a
vehicle, no distinction is to be drawn based on the vehicle's
use as a permanent residence, as opposed to *its* use as a
temporary sleeping compartment.[10]

Applying the *Johnson* rule to the facts of our case, we

---

46.04.305. It is clear from the testimony that the Winnebago in our case contained
a bathroom.

[9]*State v. Stroud,* 106 Wn.2d 144, 150-53, 720 P.2d 436 (1986), expressly over-
ruled the approach adopted by *State v. Ringer,* 100 Wn.2d 686, 674 P.2d 1240
(1983). *Ringer* had held that a warrantless vehicle search was permitted only in
order to remove any weapons the arrestee might use to resist arrest or effect an
escape, and to avoid destruction of evidence by the arrestee of the crime for
which he or she was arrested. *Id.* at 699. *Ringer* advocated a "totality of the cir-
cumstances" approach, and placed the burden on the police officers to show that
exigencies existed in that situation necessitating the search. *Id.* at 701. The
*Stroud* court found this rule to be unworkable, stating that it "makes it virtually
impossible for officers to decide whether or not a warrantless search would be
permissible. Weighing the 'totality of circumstances' is too much of a burden to
put on police officers who must make a decision to search with little more than a
moment's reflection." *Stroud,* 106 Wn.2d at 151.

[10]In fact, this extension by the majority in *Johnson* was addressed by Justice
Alexander in his concurrence:

> I concur specially because I am concerned that the majority gives *State v.*
> *Stroud,* 106 Wn.2d 144, 720 P.2d 436 (1986) a broader application than it
> deserves. The opinion appears to suggest that if a vehicle is not a 'fixed resi-
> dence,' then *any area* within the vehicle that is readily *accessible from* the pas-
> senger compartment, except for locked containers, may be searched incident
> to a lawful arrest. Majority at 449. *Stroud* does not go that far. It merely
> stands for the proposition that the 'passenger compartment of a vehicle' may
> be searched during the time immediately subsequent to the arrest of the
> suspect. *Stroud,* 106 Wn.2d at 152.

> I am satisfied, though, that the trial court correctly concluded here that the
> sleeping quarters in the cab of the Defendant's truck were part of the pas-
> senger compartment of the vehicle, as opposed to being merely an area acces-
> sible from the passenger compartment. Such a conclusion might not, however,
> be supportable in another case where a vehicle contains living quarters that
> are separate and distinct from the portion of the vehicle where the driver and
> passengers would ordinarily be located. . . .

128 Wn.2d at 459 (Alexander, J., concurring).

find that the living quarters of the Winnebago in question were within the scope of a permissible search. It is undisputed that the living area was readily accessible from the passenger compartment, and there is no indication from the record of any partition between the driver's seat and the rest of the Winnebago. Moreover, it is undisputed that Vrieling left the driver's seat and walked to the back of the Winnebago to the bathroom when Deputy Cervarich was attempting to verify her identity. As such, we conclude that our case falls under the purview of *Johnson.*

Vrieling suggests that we should nevertheless look behind *Johnson* and examine the rationale underlying warrantless automobile searches incident to arrest. Such searches are based on "the reality that the passenger compartment of a vehicle may harbor weapons for an occupant, and . . . that an occupant could easily destroy evidence in the vehicle while a warrant was being sought, or even drive the vehicle away." *State v. Hendrickson,* 129 Wn.2d 61, 73, 917 P.2d 563 (1996). Vrieling acknowledges *Stroud*'s definitive rule (which justifies searches even *after* the person has been arrested, handcuffed, and placed in a patrol car), but argues that the rule simply should not apply to motor homes because they are entitled to the heightened protection of any other residence.[11]

But as shown above, *Johnson* declined to afford the same protections to "homes located in vehicles" as to fixed residences. Furthermore, we agree with the State that Vrieling's proposal to adopt a case-by-case "exigency" rule for motor homes is the very framework of *Ringer* that was rejected as unworkable by both *Johnson* and *Stroud.* We therefore decline Vrieling's invitation to depart from the established bright-line rule.

---

[11]For example, Vrieling cites to the offense of first degree vehicle prowling, which is a class C felony and applies only to motor homes and vessels. *See* RCW 9A.52.095. She also cites to RCW 46.61.519, which exempts the living quarters of a motor home or camper from the prohibition against possessing open containers of alcohol in motor vehicles. We note that these very statutes were cited and the identical argument was made to the Supreme Court in *Johnson. See* 128 Wn.2d at 445.

We hold that under *Johnson*, an officer may search the living quarters of a motor home as a search incident to the arrest of the driver, where such quarters are readily accessible from the passenger compartment.

## B. The Zipped Cushion

■ Vrieling contends, in the alternative, that the search of the zipped seat cushion was impermissible under *Stroud*, 106 Wn.2d 144. As discussed, *Stroud* held that officers may conduct a warrantless vehicle search of the passenger compartment as a search incident to arrest, but further held that the search may not extend to a *locked* container or a *locked* glove compartment. *Id*. at 152.

Vrieling compares the zipped cushion to a locked container. We find such a comparison unpersuasive. A zipped item is simply not a locked item, and thus constitutes a container subject to search under *Stroud*. The Supreme Court reiterated application of this bright-line rule in *State v. Fladebo*, 113 Wn.2d 388, 395, 779 P.2d 707 (1989):

> In constructing her argument [challenging the search of her purse conducted immediately after her arrest], Ms. Fladebo stresses *Stroud*'s example of balancing the exigencies of an arrest against the privacy interest of the individual. *Stroud* presented a bright line rule for determining the scope of a warrantless search of an automobile incident to an arrest: the police can search the contents of the passenger compartment exclusive of locked containers or locked glovebox. *Stroud*, at 152. Ms. Fladebo argues that a woman's purse traditionally carries with it the same notions of privacy as those associated in *Stroud* with locked containers. These notions of privacy are so strong, she maintains, that purses are not manufactured with locks. Thus, Ms. Fladebo seeks to extend the *Stroud* rule to include women's purses along with locked containers.
>
> A purse, however, is not a locked container. Consequently, it does not fall within *Stroud*'s exception. The *Stroud* locked container rule carries a double purpose. It identifies a point at which privacy interests outweigh the exigencies of an arrest and, by allowing the search of unlocked containers, helps to

protect the arresting officer from danger. An unlocked purse could well conceal a readily usable weapon.

113 Wn.2d at 395 (emphasis added).

The reasoning of *Fladebo* was reaffirmed by the court in *Johnson*: "But in *State v. Fladebo* we *extended* the *Stroud* rule, holding that *all unlocked containers* found inside the passenger compartment of a vehicle could be searched during, or soon after, custodial arrest of its occupant. . . ." 128 Wn.2d at 449 (emphasis added).

Because we find that a zipped cushion cannot fairly be characterized as a locked container, and because we again reject Vrieling's invitation to depart from *Stroud*'s bright-line rule, we conclude that the search of the cushion was lawful under article I, section 7 of the Washington constitution.

We affirm.

KENNEDY, C.J., and ELLINGTON, J., concur.

Review granted at 140 Wn.2d 1005 (2000).