26 P.3d 986 (2001)
107 Wash.App. 221
STATE of Washington, Appellant,
v.
Chris MAGNESON, Respondent.
No. 25449-2-II.
Court of Appeals of Washington, Division 2.
July 13, 2001.
*987 Steven L. Olsen (Court Appointed), Bainbridge Island, for Respondent.
Randall Avery Sutton, Kitsap Co. Dep. Pros. Atty., for Appellant.
HUNT, J.
The State appeals suppression of evidence and dismissal of drug possession charges against Chris Magneson. The State argues that Magneson lacked standing to challenge evidence seized under a defective warrant used to search a home in which Magneson was a guest. Holding that Magneson had automatic standing to challenge the search and seizure, we affirm.

FACTS
The Kitsap County Sheriff's Department searched Larry Felt's house using a search warrant. Officers found Magneson, who was a guest in Felt's home, and three other men sitting at a table with methamphetamine, baggies, pipes, razors and a scale. They also found baggies of methamphetamine on Magneson.
The State charged Magneson and Felt with possession of a controlled substance with intent to deliver. Felt challenged the validity of the search warrant and persuaded the trial court that it was defective. The trial court suppressed the evidence seized under the warrant and excluded it from the case against Felt.
Magneson also moved to suppress seized evidence that the State intended to use against him. He alleged that (1) he had automatic standing to challenge the residential search of Felt's house; and (2) there was insufficient evidence to support probable cause to issue the warrant. The trial court concluded that Magneson had automatic standing to challenge the warrant's validity, ruled the warrant invalid, suppressed the evidence, and dismissed the charges against Magneson. The State appeals.[1]

*988 ANALYSIS
We review issues of standing de novo. Wolstein v. Yorkshire Ins. Co., Ltd., 97 Wash.App. 201, 206, 985 P.2d 400 (1999). Here, we address two primary issues: First, is automatic standing still viable in the State of Washington? And second, does Magneson, a houseguest of unknown duration, have automatic standing to challenge the unlawful search of another's house from which police seized evidence and used it to charge him with unlawful possession?

I. AUTOMATIC STANDING

A. CONTINUED VIABILITY IN WASHINGTON
In a recent decision, our State Supreme Court noted that the U.S. Supreme Court has eliminated automatic standing under the Fourth Amendment to the federal Constitution; then, by way of comparison, it stated, "[A]utomatic standing still maintains a presence in Washington." State v. Williams, 142 Wash.2d 17, 22, 11 P.3d 714 (2000). Although ruling that Williams did not have automatic standing in that case, the Court went on to discuss the doctrine's applicability. Williams, 142 Wash.2d at 22-23, 11 P.3d 714.
We recognize that Williams' discussion of automatic standing was dicta. But we cannot ignore the Court's clear message that automatic standing remains viable in Washington. Had the Court intended to follow the federal courts' lead in extinguishing automatic standing, it could have done so. Instead, the Court analyzed the doctrine, found it inapplicable to the facts before it, yet underscored its continued viability. Following our Supreme Court's clear directive in Williams, we hold that automatic standing remains a valid doctrine in Washington.
Thus, a defendant who meets the following three criteria has automatic standing to challenge a search: (1) He was legitimately on the premises where the search occurred; (2) the State intends to use fruits of the search against him;[2] and (3) he did not stipulate to facts that establish lack of a reasonable expectation of privacy in the premises searched or item seized.[3]Williams, 142 Wash.2d at 22-24, 11 P.3d 714. If these criteria are met, the trial court should next determine whether the search or seizure violated the defendant's constitutional right to be free of unreasonable searches and seizures,[4] invasions of his home, or disturbances of his private affairs.[5] The defendant must, however, be asserting that his or her own rights were violated. Williams, 142 Wash.2d at 23, 11 P.3d 714.

B. APPLICABILITY TO MAGNESON
Magneson meets these criteria for automatic standing. First, as a guest in Felt's house at the time of the search, Magneson was legitimately on the premises. Second, the State sought to use the fruits of the defective search to prove that Magneson was guilty of possession of methamphetamine. Third, Magneson did not do anything to defeat his expectation of privacy as a guest.[6]
*989 The facts here differ from those in Williams. Williams stipulated that he was merely a "casual visitor." Williams, 142 Wash.2d at 23-24 n. 1, 11 P.3d 714. More importantly, the police had a valid arrest warrant for Williams, which allowed his arrest and search incident to arrest anywhere they found him, whether in his own home or in the home of another. Williams, 142 Wash.2d at 24, 11 P.3d 714. In contrast, here, the police did not have a warrant for Magneson's arrest and Magneson did not stipulate that he was merely a casual visitor.
Accordingly, we hold that Magneson has automatic standing to challenge the legality of the seizure of the evidence used against him.

II. SUPPRESSION OF EVIDENCE
The officers entered Felt's house using what they understood to be a legal search warrant. But the trial court later found the warrant defective, thereby rendering their entry and search illegal. Consequently, the officers were not at a lawful vantage point when they saw Magneson near the methamphetamine and manufacturing equipment. As such, the evidence was not admissible under the plain view doctrine.[7] Thus, Magneson's arrest and seizure of drugs from his person were "fruit of the poisonous tree" and, therefore, were similarly illegal. State v. Ladson, 138 Wash.2d 343, 359, 979 P.2d 833 (1999) ("When an unconstitutional search or seizure occurs, all subsequently uncovered evidence becomes fruit of the poisonous tree and must be suppressed"). The trial court properly suppressed this illegally seized evidence and dismissed the State's prosecution of Magneson.
Affirmed.
We concur: HOUGHTON, J., and ARMSTRONG, C.J.
NOTES
[1] Like the court in Felt's case, the court here relied on State v. Thein, 138 Wash.2d 133, 977 P.2d 582 (1999), in concluding that no nexus existed between the place searched and Felt's criminal activity. The State here did not assign error to the court's ruling that the warrant application was deficient. As such, this court accepts the court's finding as true. See State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994) (unchallenged findings become verities on appeal).
[2] These first two criteria were first established in Washington in State v. Michaels, 60 Wash.2d 638, 646-47, 374 P.2d 989 (1962).
[3] The third criteria may be discerned in Williams, 142 Wash.2d at 23-24 n. 1, 11 P.3d 714, where the Court notes that Williams stipulated he was a "casual visitor." When he did so, Williams waived any claim of automatic standing because he had no reasonable expectation of privacy.
[4] U.S. CONST. amend. IV.
[5] Our State Constitution assures that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." Const. art. I, § 7.
[6] The U.S. Supreme Court has clearly held that an overnight guest has a legitimate expectation of privacy in the host's home. Minnesota v. Carter, 525 U.S. 83, 89, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (citing Minnesota v. Olson, 495 U.S. 91, 98-99, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)). Moreover, a majority of the Court's Justices agree that "almost all social guests" have a reasonable expectation of privacy. Carter, 525 U.S. at 109 n. 2, 119 S.Ct. 469 (Ginsberg, J., dissenting) (quoting Kennedy, J., concurring).
[7] It is a well established rule that "objects falling in the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be introduced in evidence." Harris v. United States, 390 U.S. 234, 236, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968) (citations omitted); State v. Regan, 76 Wash.2d 331, 336, 457 P.2d 1016 (1969).