39 P.3d 371 (2002)
STATE of Washington, Respondent/Cross-Appellant,
v.
Seth KYPREOS, Appellant/Cross-Respondent.
No. 47405-7-I.
Court of Appeals of Washington, Division 1.
February 4, 2002.
*372 David Bruce Koch, Nielsen Broman & Koch, P.L.L.C., Harlan Russell Dorfman, Seattle, for Appellant.
Rebecca Jane Quirk, Deputy Prosecuting Atty, Everett, for Respondent.
BAKER, J.
Seth Kypreos was convicted of unlawful possession of a firearm in the first degree after a gun was found in his possession during a warrantless search of a fifth wheel trailer. Kypreos was denied standing to challenge the search of the trailer which the police entered after discovering that it had been reported stolen. Kypreos alleges he was an overnight guest of the person he believed was the lawful owner of the trailer. Kypreos argues that he has automatic standing to challenge the search because he was charged with a possessory offense and he was in possession of the weapon at the time of the contested search. Further, he contends that the warrantless police intrusion into the trailer did not fall into any of the exceptions to the warrant requirement. We hold that the trial court used an incorrect standard to determine whether Kypreos had standing to object to the search. Thus, we reverse and remand.

I
Snohomish County Sheriff's deputies, who were looking for a stolen utility trailer and a woman named Stephanie Smithson who they believed was involved in drug activity, went to the property of Albert Odegard. They spoke with Odegard and his daughter Jamie about Smithson and the missing utility trailer.
While there, the deputies noticed a fifth wheel trailer and radioed in its description. They were advised that the registered owner *373 had reported the trailer stolen. She reported that the trailer had served as her residence, and specifically requested that the trailer not be impounded. The deputies learned that Jamie had granted Smithson permission to park the trailer on her father's property.
Odegard told the deputies that Smithson and her boyfriend Kypreos had been living in the trailer. He said he wanted the trailer and all of the people associated with it to be removed from the property because of alleged drug activity associated with it. Jamie explained that Smithson had told her that she was buying the trailer, but did not have title yet because it was being mailed to her.
Upon learning that the trailer was stolen, one of the deputies knocked on the door of the trailer and entered. When he did not find anyone in the living area of the trailer, he drew his gun and opened the sliding door leading to the sleeping area. There, he discovered Kypreos in the bed. Once Kypreos was removed from the trailer and placed in handcuffs, the deputy searched the sleeping quarters and discovered a loaded .45 caliber automatic handgun in the bed.
Kypreos expressed surprise when he was told that the trailer was stolen. He stated that he had seen the bill of sale, and that it could not possibly be stolen. Kypreos was advised to leave the premises. The trailer was left on Odegard's property. Kypreos was subsequently charged with unlawful possession of the handgun.
Kypreos moved to suppress the evidence of the handgun, but the trial court concluded that Kypreos did not have standing to challenge the search. Kypreos was then found guilty at a stipulated trial of unlawful possession of a firearm in the first degree. He now appeals the denial of his motion to suppress.

II
The validity of a warrantless search is reviewed de novo.[1]
Generally, a criminal defendant alleging an infringement of Fourth Amendment rights first has to show standing to raise the claim.[2] However, an "automatic standing" exception to this rule was created for defendants charged with a possessory offense. In Jones v. United States,[3] federal officers arrested Jones in a friend's apartment where he was a guest after discovery of narcotics in the apartment.[4] The court determined that Jones had standing to challenge the search on two alternative bases. The first became known as the automatic standing rule, which applies if (1) the offense with which he is charged involves possession as an essential element of the offense; and (2) the defendant was in possession of the contraband at the time of the contested search or seizure.[5] The second basis relied on was the legitimately on the premises rule, which applies when (1) the defendant is legitimately on the premises where a search occurred; and (2) the fruits of the search are proposed to be used against him.[6]
In the later case of Rakas v. Illinois,[7] the U.S. Supreme Court merged the concept of standing into Fourth Amendment privacy analysis.[8]Rakas abandoned the "legitimately on the premises" formulation in favor of the "legitimate expectation of privacy standard" because the Court wished to purge Fourth Amendment analysis of "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like...."[9] In the 1980 case of United States *374 v. Salvucci,[10] the Court completely abolished automatic standing in favor of the legitimate expectation of privacy standard. Under the legitimate expectation of privacy analysis, a defendant may challenge a search or seizure only when he or she possesses a legitimate personal privacy interest in the area searched or seized.[11]
As the U.S. Supreme Court reformulated its earlier Fourth Amendment interpretations, state courts, including our own, have relied on their state constitutions for authority to provide more expansive protections against governmental searches and seizures.[12] These courts have usually employed a two-step approach. First, citing perceived shortcomings in the U.S. Supreme Court's current interpretation of the Fourth Amendment, the courts concluded that the legitimate expectation of privacy standard provides insufficient protection against government abuses.[13] Having reached this conclusion, the courts then interpreted their state constitutions in a manner which provides a greater opportunity for persons charged with possessory crimes to challenge unreasonable searches and seizures.[14]
*375 In this state, the supreme court first adopted a version of the automatic standing rule in State v. Michaels.[15] The court held that a defendant has standing to challenge searches and seizures if he is legitimately on the premises where the search occurs and if the fruits of the search are proposed to be used against him.[16] Thus Michaels adopted the rule as formulated in Jones.
Our court revisited the issue after the U.S. Supreme Court abandoned automatic standing in Salvucci. In the 1980 case of State v. Simpson,[17] the court adhered to the automatic standing rule, stating that:
In our view, our constitution's privacy clause, with its specific affirmation of the privacy interests of all citizens, encompasses the right to assert a violation of privacy as a result of impermissible police conduct at least in cases where, as here, a defendant is charged with possession of the very item which was seized.
. . . .
Under these circumstances, we discern both a continuing policy basis and firm state constitutional grounds for adherence to the automatic standing rule. The rule is already established under our state constitution and has served our state well for 17 years.[[18]]
In Simpson, a stolen vehicle was parked and locked in front of the defendant's residence. The police unlocked the vehicle and entered it without a warrant to locate the vehicle's identification number. The court ruled that the defendant had automatic standing to challenge the search because (1) he had demonstrated a possessory intent toward the vehicle, and (2) he was charged with possession of the item seized. The court's plurality opinion does not include a "legitimately on the premises" analysis.
In the later case of State v. Zakel,[19] our supreme court, again with a divided court, inferred that the automatic standing rule has continuing validity in this state, but determined that the doctrine was factually inapplicable.[20] At the court of appeals level in Zakel, this court had commented that automatic standing "was not intended as a means for defendants to acquire standing to challenge the search of an area where they had no legitimate right to be."[21] The supreme court disagreed, and noted that "[t]he `legitimately on [the] premises' rationale, however, is a basis for standing wholly separate from automatic standing."[22] The court further stated that under Simpson, a defendant need not have a legitimate right to be in a place to assert automatic standing.[23]
Then, in State v. Williams,[24] our supreme court in a 5-4 decision inferred, without explicitly holding, that the automatic standing rule has continuing validity under our state constitution.[25] But the court determined that the automatic standing doctrine was inapplicable, in part because there was no direct relationship between the fruits of the search and the search the defendant sought to contest.[26] And, in reviewing the history of that doctrine in this state, the court noted that Michaels had held that application of the doctrine is proper where the "legitimately on the premises" test is satisfied.[27]
*376 Most recently, in State v. Magneson,[28] Division Two of this court characterized the automatic standing doctrine in a different manner: "(1) He was legitimately on the premises where the search occurred; (2) the State intends to use fruits of the search against him; and (3) he did not stipulate to facts that establish lack of a reasonable expectation of privacy in the premises searched or item seized."[29]
In view of the caselaw on the subject, it is not surprising that Kypreos argues that automatic standing applies "if: (1) the offense with which he is charged involves possession as an `essential' element of the offense; and (2) the defendant was in possession of the contraband at the time of the contested search or seizure,"[30] whereas in contrast, the State argues the application of automatic standing is proper only where the defendant was legitimately on the premises.
Under Kypreos' version of automatic standing, a person who breaks into someone else's apartment while armed and is arrested there during the course of an illegal entry by the police, would have automatic standing to challenge the police entry if he was charged with illegal possession of a weapon. The State's version of automatic standing adopted by the trial court likewise is problematic. First, it improperly conflates two different bases for standing as the court pointed out in Zakel. "[T]he `legitimately on [the] premises' rationale, however, is a basis for standing wholly separate from automatic standing."[31] Second, the legitimately on the premises requirement requires the courts to carry out "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like,"[32] and leads to results we believe to be incompatible with the privacy interests guaranteed in article I, section 7 of our state constitution. For example, if one resides in a trailer and reasonably believes that he is the rightful owner, a defective title to the trailer would allow unlimited police intrusion into the trailer, leaving the possessor without the protection of our constitution because he lacks standing. The same result would occur when a passenger rides in a car he reasonably believes is owned by the driver, but the vehicle is in fact stolen. That passenger would lack standing because he is not legitimately on the premises. As the court in Michaels explained, "[t]he constitution of this state and the Constitution of the United States do not protect only those who have legal title to the premises searched."[33]
Finally, we reject the State's characterization of automatic standing because it renders the doctrine completely unnecessary. If a defendant is able to establish a legitimate expectation of privacy in the area searched, then he has satisfied the standing test under a Fourth Amendment analysis and does not need to rely on automatic standing.[34]
Thus, we conclude that the doctrine of automatic standing has, and should have, continuing validity in the jurisprudence of this state, but that neither formulation of that doctrine proffered by the parties in this case strikes a proper balance. Our concerns can be satisfied, however, if the test were formulated so as to avoid focusing on the legitimacy of the defendant's presence in the area to be searched, in the property law sense. Rather, the focus should be on the reasonableness of the defendant's belief that he was legitimately on those premises.
Therefore, we hold that automatic standing applies if: (1) the offense with which the defendant is charged involves possession as an essential element of the offense; (2) the defendant was in possession of the contraband at the time of the contested search or seizure; (3) the contraband bears a direct relationship to the search sought to be *377 contested; and (4) the defendant reasonably believed he was legitimately on the premises where the search occurred. This formulation does not require our courts to carry out "arcane distinctions developed in property and tort law between guests, licensees, invitees, and the like"[35] because courts need not determine whether the defendant was in fact legitimately on the premises. Rather, the courts need only determine whether the defendant reasonably believed he was legitimately in the area searched. Thus, a burglar would not reasonably believe he was legitimately on the premises, and would lack standing. The same is true for someone who was a passenger in a stolen car and knew or should have known that the vehicle was stolen. However, a passenger who reasonably believed the person giving him the ride was the true owner would have standing. We are convinced, as our court was in Simpson, that:
Any other conclusion allows the invasion of a constitutionally protected interest to be insulated from judicial scrutiny by a technical rule of `standing'. The inability to assert such an interest threatens all of Washington's citizens, since no other means of deterring illegal searches and seizures is readily available.[[36]]
Here, unlike in Williams, there is a direct relationship between the "fruits" of the search and the search itself. The police entered the trailer in search of evidence, and found Kypreos. A second search yielded the "fruits" of the search, a handgun. The offense with which Kypreos is charged involves possession as an essential element of the offense and Kypreos was in possession of the gun at the time of the contested search. There is a direct relationship between the challenged search and the contraband. The only unresolved issue is whether Kypreos reasonably believed he was legitimately in the trailer. Kypreos asserts that he believed he was legitimately on the premises. He expressed surprise when police told him the trailer was stolen, and stated that he had seen the bill of sale. But his credibility has not yet been weighed by a trier of fact. If on remand the trial court determines that Kypreos did reasonably believe that he was legitimately on the premises, then Kypreos has standing to contest the validity of the entries and searches.
If Kypreos is found to have standing, the trial court must then determine whether the warrantless entries and searches were legally justified. In the interest of judicial economy, we examine that issue now. Article I, section 7 provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Because article I, section 7 provides greater protections against warrantless searches and seizures than does the Fourth Amendment, we begin with Kypreos' claim under the state constitution.[37]
As a general rule, warrantless searches are per se unreasonable.[38] A few jealously guarded exceptions to the warrant requirement may justify a warrantless intrusion.[39] The burden is always on the State to prove one of these narrow exceptions.[40] The Washington State Supreme Court has stated: "The ultimate teaching of our case law is that the police may not abuse their authority to conduct a warrantless search or seizure under a narrow exception to the warrant requirement when the reason for the search or seizure does not fall within the scope of the reason for the exception."[41] Here, the State relies on three theories to justify the warrantless search: that (1) the deputies were authorized to impound the trailer because it is a vehicle; (2) the deputies were performing their community caretaking function;
*378 and (3) the deputies had implied consent to enter the trailer.
As to the first argument, the fact is that the deputies did not impound the trailer, nor does the trailer qualify as a vehicle. In California v. Carney,[42] the Supreme Court held that the search of a motor home parked in a public place fell within the scope of the "automobile exception" to the warrant requirement.[43] The Court explained that governmental interest in promoting safe and efficient public transportation "necessarily lead[s] to reduced expectations of privacy...."[44] Because the motor home was readily mobile and subject to broad regulations inapplicable to fixed dwellings, "the overriding societal interests in effective law enforcement justif[ied] an immediate search before the vehicle and its occupants [became] unavailable."[45] Thus, the distinction between searches of a private home from searches of automobiles or public places is very important under a Fourth Amendment analysis, and even more so under article I, section 7 review. As this court recently stated in State v. Johnson:[46]
[T]he home is a "highly private place" and "receives heightened constitutional protection."... [A]rticle I, section 7 affords greater protection from an officer's search of a home than the Fourth Amendment.[[47]]
The general rule is that:
[W]hen a home is located in a vehicle, in such a way as to make it readily accessible from the passenger compartment, the safety of law enforcement officers and the need for a bright-line rule militate against prohibiting officers from searching a sleeping area which is readily accessible from the passenger compartment.[[48]]
But, as Justice Alexander stated in his concurrence in State v. Johnson:[49]
Such a conclusion might not, however, be supportable in another case where a vehicle contains living quarters that are separate and distinct from the portion of the vehicle where the driver and passengers would ordinarily be located. In such a circumstance, the twofold rationale articulated in [State v.] Stroud [106 Wash.2d 144, 720 P.2d 436 (1986)] would not support a conclusion that a warrantless search of living quarters in a vehicle is justified.[[50]]
In Johnson, the court was faced with the question of whether a search of the sleeping compartment in the cab of a tractor-trailer was permissible as a search incident to the arrest of the driver.[51] The sleeper contained a bed and a clothes closet, and was accessible to the cab by an open portal or "walk-through area connected by a rubber boot."[52] A curtain could be drawn to separate the cab from the sleeper.[53] The court upheld the search under both state and federal constitutional grounds. In analyzing the issue under article I, section 7, the court rejected the argument that the sleeper was a temporary residence or home entitled to the same protections as a fixed residence.[54] In State v. Vrieling,[55] we determined that so long as the *379 home is located in a vehicle, vehicle search rules apply with no distinction drawn based on the vehicle's use as a permanent residence as opposed to its use as a temporary sleeping compartment.[56]
Additionally, Washington's motor vehicles statute defines motor vehicle as every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails.[57]
Here, the trailer is not a tractor-trailer. It is not a motor home or Winnebago as in Vrieling. Nor was the trailer found on a public highway or in a public place, but rather it was located on private property. The trailer was not attached to any motorized vehicle. The fact that there was no motorized vehicle there with the proper receptacle attached made the trailer not readily mobile. Accordingly, the immobile trailer is more akin to a dwelling for search and seizure analysis, and not subject to the automobile exception.
We also reject the community caretaking function argument. The U.S. Supreme Court first announced the "community caretaking function" exception in Cady v. Dombrowski.[58] The Washington State Supreme Court first cited Cady in State v. Houser,[59] an automobile impoundment case. Houser rejected the community caretaking exception theory under the facts there because the State failed to show the necessity, i.e., that the vehicle threatened public safety or convenience.[60] Here, the State argues that although the police did not impound the trailer, there was ample concern that the trailer could be subject to future vandalism and theft.[61] There is no evidence in the record to support this assertion, nor is there evidence that the trailer threatened public safety. Moreover, the community caretaking function must be totally divorced from a criminal investigation.[62] Here, the detectives were obviously engaged in a criminal investigation.
Finally, we do not agree with the State that implied consent to search the trailer was given by the registered owner simply by virtue of reporting it stolen. The owner had instructed the police not to impound the trailer, and the trailer was left on private property for the owner to retrieve it.
There were no exigent circumstances which obviated the need to obtain a search warrant. Based on the property owner's statements, a warrant could have readily been obtained. We conclude that if Kypreos has standing to challenge the search, the search cannot withstand constitutional scrutiny.
REVERSED AND REMANDED.
GROSSE, J., and WEBSTER, J., concur.
NOTES
[1] United States v. Van Poyck, 77 F.3d 285, 290 (9th Cir. 1996).
[2] See 5 Wayne R. Lafave, Search and Seizure: A Treatise on the Fourth Amendment § 11.3, at 116 (3d ed. 1996).
[3] 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).
[4] Jones, 362 U.S. at 259, 80 S.Ct. 725.
[5] Jones, 362 U.S. at 263-65, 80 S.Ct. 725.
[6] Jones, 362 U.S. at 265-67, 80 S.Ct. 725.
[7] 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978).
[8] See Rakas, 439 U.S. at 138-40, 99 S.Ct. 421.
[9] Rakas, 439 U.S. at 143, 99 S.Ct. 421.
[10] 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980) (abandoning automatic standing).
[11] Salvucci, 448 U.S. at 92, 100 S.Ct. 2547.
[12] The United States Supreme Court has long held that a state court's decision is not reviewable by a federal court if made on independent and adequate state grounds. See, e.g., PruneYard Shopping Center v. Robins, 447 U.S. 74, 81, 100 S.Ct. 2035, 64 L.Ed.2d 741 (1980); Oregon v. Hass, 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); Cooper v. California, 386 U.S. 58, 62, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967).
[13] See, e.g., State v. Alston, 88 N.J. 211, 440 A.2d 1311, 1319 (1981) (criticizing the Rakas standard as vague, and subject "to the potential for inconsistent and capricious application").
[14] For a general discussion, see Rebecca L. Garrett, Standing Under State Search and Seizure Provision: Why the Minnesota Supreme Court Should Have Rejected the Federal Standards and Instead Invoked Greater Protection Under Its Own Constitution in State v. Carter, 51 Me. L. Rev. 359 (1999); Kent M. Williams, Note, Property Rights Protection Under Article 1, Section 10 of the Minnesota Constitution: A Rationale for Providing Possessory Crimes Defendants with Automatic Standing to Challenge Unreasonable Searches and Seizures, 75 Minn. L. Rev. 1255 (1991). Eight state courts have retained some type of automatic standing via their state constitutions: State v. Owen, 453 So.2d 1202, 1205 (1984) (holding that under Louisiana Constitution article 1, section 5 "any person adversely affected" by a search or seizure allegedly conducted in violation of article 1, section 5 has standing to raise that illegality); Commonwealth v. Amendola, 406 Mass. 592, 550 N.E.2d 121, 126 (1990) (holding that a defendant charged with a crime in which possession of seized evidence is an element of the crime is "deemed to have standing to contest the legality of the search and the seizure of that evidence"); State v. Settle, 122 N.H. 214, 447 A.2d 1284, 1286 (1982) ("[w]e are convinced that the language of our constitution requires that `automatic standing' be afforded to all persons within the State of New Hampshire who are charged with crimes in which possession of any article or thing is an element"); State v. Alston, 88 N.J. 211, 440 A.2d 1311, 1319 (1981) ("rather than follow the amorphous `legitimate expectations of privacy in the area searched' standard as applied in Rakas, Salvucci and Rawlings [v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980)], we retain the rule of standing traditionally applied in New Jersey, namely, that a criminal defendant is entitled to bring a motion to suppress evidence obtained in an unlawful search and seizure if he has a proprietary, possessory or participatory interest in either the place searched or the property seized"); People v. Millan, 69 N.Y.2d 514, 516 N.Y.S.2d 168, 508 N.E.2d 903, 905, (1987); Commonwealth v. Sell, 504 Pa. 46, 470 A.2d 457, 468 (1983) (a defendant accused of a possessory crime who seeks to challenge a search and seizure under article I, section 8 has "automatic standing"); State v. Wood, 148 Vt. 479, 536 A.2d 902, 908 (1987) (a defendant need only assert a possessory, proprietary or participatory interest in the item seized or the area searched to establish standing to assert an Article Eleven challenge); State v. Simpson, 95 Wash.2d 170, 180-81, 622 P.2d 1199, (1980). In a ninth case, State v. Simons, 86 Or.App. 34, 738 P.2d 590, 592, (1987), the Oregon Court of Appeals adopted automatic standing as a matter of state constitutional law. Although the Oregon Supreme Court has not yet expressly adopted automatic standing, it has largely rejected the United States Supreme Court's "legitimate expectation of privacy" test. See, e.g., State v. Tanner, 304 Or. 312, 745 P.2d 757, 762 n. 7 (1987) (noting that the Oregon Constitution protects substantive rights, rather than expectations of privacy). Moreover, besides denying review in Simons, the state supreme court denied standing to a defendant who challenged a search and seizure that took place before he possessed the contraband, on the ground that the defendant had no privacy or property right in the item at the time of the search and seizure. See State v. Kosta, 304 Or. 549, 748 P.2d 72, 75 (1987); State v. Knox, 160 Or.App. 668, 984 P.2d 294, review denied, 329 Or. 527, 994 P.2d 128 (1999) (this is consistent with the automatic standing rule, which provides standing only to those defendants accused of illegally possessing an item at the time of the contested search or seizure).
[15] 60 Wash.2d 638, 374 P.2d 989 (1962).
[16] Michaels, 60 Wash.2d at 646-47, 374 P.2d 989.
[17] 95 Wash.2d 170, 622 P.2d 1199, (1980).
[18] Simpson, 95 Wash.2d at 180-81, 622 P.2d 1199.
[19] 119 Wash.2d 563, 834 P.2d 1046 (1992).
[20] Zakel, 119 Wash.2d at 570-71, 834 P.2d 1046.
[21] State v. Zakel, 61 Wash.App. 805, 809, 812 P.2d 512 (1991).
[22] Zakel, 119 Wash.2d at 570-71 n. 3, 834 P.2d 1046
[23] Zakel, 119 Wash.2d at 570-71 n. 3, 834 P.2d 1046.
[24] 142 Wash.2d 17, 11 P.3d 714 (2000).
[25] Williams, 142 Wash.2d at 22, 11 P.3d 714.
[26] Williams, 142 Wash.2d at 23, 11 P.3d 714.
[27] Williams, 142 Wash.2d at 22, 11 P.3d 714.
[28] 107 Wash.App. 221, 26 P.3d 986 (2001).
[29] Magneson, 107 Wash.App. at 225, 26 P.3d 986.
[30] Simpson, 95 Wash.2d at 181, 622 P.2d 1199; Justice Charles W. Johnson, Survey of Washington Search and Seizure Law: 1998 Update, 22 Seattle U.L.Rev. 337, 375 (1998) (Justice Johnson concluding this is the proper formulation).
[31] Zakel, 119 Wash.2d at 570-71 n. 3, 834 P.2d 1046.
[32] Rakas, 439 U.S. at 143, 99 S.Ct. 421.
[33] Michaels, 60 Wash.2d at 646, 374 P.2d 989.
[34] Salvucci, 448 U.S. at 93, 95, 100 S.Ct. 2547.
[35] Rakas, 439 U.S. at 143, 99 S.Ct. 421.
[36] Simpson, 95 Wash.2d at 180, 622 P.2d 1199.
[37] State v. Ladson, 138 Wash.2d 343, 348, 979 P.2d 833 (1999).
[38] Ladson, 138 Wash.2d at 349, 979 P.2d 833 (quoting State v. Hendrickson, 129 Wash.2d 61, 70, 917 P.2d 563 (1996).)
[39] Ladson, 138 Wash.2d at 349, 979 P.2d 833.
[40] Ladson, 138 Wash.2d at 350, 979 P.2d 833.
[41] Ladson, 138 Wash.2d at 357, 979 P.2d 833.
[42] 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985).
[43] Carney, 471 U.S. at 394, 105 S.Ct. 2066.
[44] Carney, 471 U.S. at 392, 105 S.Ct. 2066.
[45] Carney, 471 U.S. at 393, 105 S.Ct. 2066.
[46] 104 Wash.App. 409, 16 P.3d 680, review denied, 143 Wash.2d 1024, 25 P.3d 1020 (2001).
[47] Johnson, 104 Wash.App. at 415, 16 P.3d 680. See also, Houser, 95 Wash.2d 143, 149, 622 P.2d 1218 (1980) ("the expectation of privacy in regard to one's automobile is less than that relating to a home or office").
[48] State v. Johnson, 128 Wash.2d 431, 449, 909 P.2d 293 (1996) (quoting Johnson, 77 Wash.App. at 447, 892 P.2d 106.)
[49] 128 Wash.2d 431, 909 P.2d 293.
[50] Johnson, 128 Wash.2d at 459, 909 P.2d 293 (J. Alexander, concurring).
[51] Johnson, 128 Wash.2d at 434, 909 P.2d 293.
[52] Johnson, 128 Wash.2d at 436, 909 P.2d 293.
[53] Johnson, 128 Wash.2d at 436, 909 P.2d 293.
[54] Johnson, 128 Wash.2d at 449-50, 909 P.2d 293.
[55] 97 Wash.App. 152, 983 P.2d 1150 (1999), aff'd, 144 Wash.2d 489, 28 P.3d 762 (2001).
[56] Vrieling, 97 Wash.App. at 158, 983 P.2d 1150.
[57] RCW 46.04.320.
[58] 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973).
[59] 95 Wash.2d 143, 622 P.2d 1218 (1980).
[60] Houser, 95 Wash.2d at 151-52, 622 P.2d 1218 (citing South Dakota v. Opperman, 428 U.S. 364, 368-69, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976).)
[61] Simpson, 95 Wash.2d at 189, 622 P.2d 1199 (the police can impound a vehicle if it is threatened by vandalism or theft of its contents).
[62] State v. Kinzy, 141 Wash.2d 373, 385, 5 P.3d 668 (2000), cert denied, 531 U.S. 1104, 121 S.Ct. 843, 148 L.Ed.2d 723 (2001).