[No. 47405-7-I. Division One. December 9, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. SETH KYPREOS, *Appellant.*

---

[11] 107 Wn. App. 861, 28 P.3d 813 (2001).

*David B. Koch* (of *Nielsen, Broman & Koch, P.L.L.C.*); and *Harlan R. Dorfman*, for appellant.

*James H. Krider, Prosecuting Attorney*, and *Rebecca J. Quirk, Deputy*, for respondent.

BAKER, J. — Seth Kypreos was convicted of unlawful possession of a firearm in the first degree after a gun was found in his possession during a warrantless search of a fifth-wheel trailer. Kypreos was denied standing to challenge the search of the trailer which the police entered after discovering that it had been reported stolen. Kypreos alleges he was an overnight guest of the person he believed

was the lawful owner of the trailer. He argues that he has automatic standing to challenge the search because he was charged with a possessory offense and he was in possession of the weapon at the time of the contested search. Further, he contends that the warrantless police intrusion into the trailer did not fall into any of the exceptions to the warrant requirement. We agree, and reverse.

I

Snohomish County sheriff's deputies, who were looking for a stolen utility trailer and a woman named Stephanie Smithson, who they believed was involved in drug activity, went to the property of Albert Odegard. They spoke with Odegard and his daughter Jamie about Smithson and the missing utility trailer.

While there, the deputies noticed a fifth-wheel trailer and radioed in its description. They were advised that the registered owner had reported the trailer stolen. She reported that the trailer had served as her residence, and specifically requested that the trailer not be impounded. The deputies learned that Jamie had granted Smithson permission to park the trailer on her father's property.

Odegard told the deputies that Smithson and her boyfriend Kypreos had been living in the trailer. He said he wanted the trailer and all of the people associated with it to be removed from the property because of alleged drug activity associated with it. Jamie explained that Smithson had told her that she was buying the trailer, but did not have title yet because it was being mailed to her.

Upon learning that the trailer was stolen, one of the deputies knocked on the door of the trailer and entered. When he did not find anyone in the living area of the trailer, he drew his gun and opened the sliding door leading to the sleeping area. There, he discovered Kypreos in the bed. Once Kypreos was removed from the trailer and placed in handcuffs, the deputy searched the sleeping quarters and

discovered a loaded .45 caliber automatic handgun in the bed.

Kypreos expressed surprise when he was told that the trailer was stolen. He stated that he had seen the bill of sale, and that it could not possibly be stolen. Kypreos was advised to leave the premises. The trailer was left on Odegard's property. Kypreos was subsequently charged with unlawful possession of the handgun.

Kypreos moved to suppress the evidence of the handgun, but the trial court concluded that Kypreos did not have standing to challenge the search. Kypreos was then found guilty at a stipulated trial of unlawful possession of a firearm in the first degree. He now appeals the denial of his motion to suppress.

## II

We first consider whether Kypreos has standing to challenge the search of the trailer. He argues that his standing is automatic because "(1) the offense with which he is charged involves possession as an 'essential' element of the offense; and (2) [he] was in possession of the contraband at the time of the contested search or seizure."[1] In contrast, the State argues the application of automatic standing is proper only where the defendant was legitimately on the premises. In light of *State v. Jones*,[2] we conclude that Kypreos has automatic standing to challenge the search.

 While the doctrine of automatic standing has been abandoned by the United States Supreme Court, and has been the subject of controversy in our courts, it " 'still maintains a presence in Washington.' "[3] In *Jones* the Wash-

---

[1] *State v. Simpson*, 95 Wn.2d 170, 181, 622 P.2d 1199 (1980); Charles W. Johnson, *Survey of Washington Search and Seizure Law: 1998 Update*, 22 SEATTLE U. L. REV. 337, 375 (1998) (Justice Johnson concluding this is the proper formulation).

[2] 146 Wn.2d 328, 45 P.3d 1062 (2002).

[3] *Jones*, 146 Wn.2d at 331-32 (quoting *State v. Williams*, 142 Wn.2d 17, 22, 11 P.3d 714 (2000)).

ington Supreme Court held that "[t]o assert automatic standing a defendant (1) must be charged with an offense that involves possession as an essential element; and (2) must be in possession of the subject matter at the time of the search or seizure."[4] Further, there must be a direct relationship "between the challenged police action and the evidence used against the defendant."[5]

In *Jones*, the defendant was stopped for a traffic violation and subsequently arrested on an outstanding warrant. After Jones was arrested, deputies removed his passenger from the car but ordered her to leave her purse in the car.[6] The police then searched the purse and seized a firearm found in the purse. Prior to trial, Jones moved to suppress the firearm. The trial court denied Jones's motion, and Jones was convicted of unlawful possession of a firearm. The Washington Supreme Court reversed, holding that Jones had automatic standing under the test enumerated above and further held "that the search of a passenger's purse is not justified incident to a driver's arrest absent evidence that the passenger's purse was in the immediate control of the driver."[7]

As in *Jones*, the charge here is unlawful possession of a firearm. The first requirement of automatic standing is satisfied "because possession is an essential element of the crime charged."[8]

Turning to the second requirement, "possession may be actual or constructive to support a criminal charge."[9] "A defendant has actual possession when he or she has physical custody of the item and constructive possession if he or

---

[4] *Jones*, 146 Wn.2d at 332 (citing *Simpson*, 95 Wn.2d at 181).

[5] *Jones*, 146 Wn.2d at 334.

[6] *Jones*, 146 Wn.2d at 331.

[7] *Jones*, 146 Wn.2d at 331.

[8] *Jones*, 146 Wn.2d at 332-33.

[9] *Jones*, 146 Wn.2d at 333 (citing *State v. Callahan*, 77 Wn.2d 27, 29, 459 P.2d 400 (1969)).

she has dominion and control over the item."[10] "Dominion and control means that the object may be reduced to actual possession immediately."[11] In *Jones*, the Washington Supreme Court agreed with the Court of Appeals that Jones had constructive possession of the purse because he exercised control over his car and the contents therein, he stored items in the purse, and he admitted that the gun in the purse belonged to him. Similarly, Kypreos had constructive possession of the firearm because he exercised control over the trailer. He claimed that he was the overnight guest of the person who owned the trailer. Further, he was in the trailer at the time of the search and was found under the covers of the bed where the firearm was located.

There is also a direct relationship between the "fruits" of the search and the challenged police action. The police entered the trailer in search of evidence, and found Kypreos. A second search yielded the "fruits" of the search, a handgun. Kypreos has automatic standing to challenge the search.

■ We next address whether the warrantless entries and searches were legally justified. Article I, section 7 of our state constitution provides: "No person shall be disturbed in his private affairs, or his home invaded, without authority of law." Because article I, section 7 provides greater protections against warrantless searches and seizures than does the Fourth Amendment, we begin with Kypreos' claim under the state constitution.[12]

■ ■ " 'As a general rule, warrantless searches and seizures are per se unreasonable.' "[13] A few jealously guarded exceptions to the warrant requirement may justify a warrantless intrusion.[14] "The burden is always on the

---

[10] *Jones*, 146 Wn.2d at 333 (citing *Callahan*, 77 Wn.2d at 29).

[11] *Jones*, 146 Wn.2d at 333.

[12] *State v. Ladson*, 138 Wn.2d 343, 348, 979 P.2d 833 (1999).

[13] *Ladson*, 138 Wn.2d at 349 (quoting *State v. Hendrickson*, 129 Wn.2d 61, 70, 917 P.2d 563 (1996)).

[14] *Ladson*, 138 Wn.2d at 349.

[S]tate to prove one of these narrow exceptions."[15] The Washington State Supreme Court has stated: "The ultimate teaching of our case law is that the police may not abuse their authority to conduct a warrantless search or seizure under a narrow exception to the warrant requirement when the reason for the search or seizure does not fall within the scope of the reason for the exception."[16] The State relies on three theories to justify the warrantless search: that (1) the deputies were authorized to impound the trailer because it is a vehicle, (2) the deputies were performing their community caretaking function, and (3) the deputies had implied consent to enter the trailer.

 First, the deputies did not impound the trailer, nor does the trailer qualify as a vehicle. In *California v. Carney*,[17] the United States Supreme Court held that the search of a motor home parked in a public place fell within the scope of the automobile exception to the warrant requirement.[18] The Court explained that governmental interest in promoting safe and efficient public transportation "necessarily lead[s] to reduced expectations of privacy . . . ."[19] Because the motor home was readily mobile and subject to broad regulations inapplicable to fixed dwellings, "the overriding societal interests in effective law enforcement justif[ied] an immediate search before the vehicle and its occupants [became] unavailable."[20] Thus, the distinction between searches of a private home from searches of automobiles or public places is very important under a Fourth Amendment analysis, and even more so

---

[15] *Ladson*, 138 Wn.2d at 350.

[16] *Ladson*, 138 Wn.2d at 357.

[17] 471 U.S. 386, 105 S. Ct. 2066, 85 L. Ed. 2d 406 (1985).

[18] *Carney*, 471 U.S. at 394.

[19] *Carney*, 471 U.S. at 392.

[20] *Carney*, 471 U.S. at 393.

under article I, section 7 review. As this court recently stated in *State v. Johnson*:[21]

> [T]he home is a "highly private place" and "receives heightened constitutional protection." . . . [A]rticle I, section 7 affords greater protection from an officer's search of a home than the Fourth Amendment.[22]

The general rule is that:

> "[W]hen a home is located in a vehicle, in such a way as to make it readily accessible from the passenger compartment, the safety of law enforcement officers and the need for a bright-line rule militate against prohibiting officers from searching a sleeping area which is readily accessible from the passenger compartment."[23]

But, as Justice Gerry L. Alexander stated in his concurrence in *State v. Johnson*:

> Such a conclusion might not, however, be supportable in another case where a vehicle contains living quarters that are separate and distinct from the portion of the vehicle where the driver and passengers would ordinarily be located. In such a circumstance, the twofold rationale articulated in [*State v.*] *Stroud*[, 106 Wn.2d 144, 720 P.2d 436 (1986),] would not support a conclusion that a warrantless search of living quarters in a vehicle is justified.[24]

In *Johnson*, the court was faced with the question of whether a search of the sleeping compartment in the cab of a tractor-trailer was permissible as a search incident to the arrest of the driver.[25] The sleeper contained a bed and a clothes closet, and was accessible to the cab by an open

---

[21] 104 Wn. App. 409, 16 P.3d 680, *review denied*, 143 Wn.2d 1024 (2001).

[22] *Johnson*, 104 Wn. App. at 415 (quoting *State v. Young*, 123 Wn.2d 173, 185, 867 P.2d 593 (1994)). *See also State v. Houser*, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980) ("[T]he expectation of privacy in regard to one's automobile is less than that relating to a home or office.").

[23] *State v. Johnson*, 128 Wn.2d 431, 449, 909 P.2d 293 (1996) (quoting *State v. Johnson*, 77 Wn. App. 441, 447, 892 P.2d 106 (1995)).

[24] *Johnson*, 128 Wn.2d at 459 (Alexander, J., concurring).

[25] *Johnson*, 128 Wn.2d at 434.

portal or "walk-through area connected by a rubber boot."[26] A curtain could be drawn to separate the cab from the sleeper.[27] The court upheld the search under both state and federal constitutional grounds. In analyzing the issue under article I, section 7, the court rejected the argument that the sleeper was a temporary residence or home entitled to the same protections as a fixed residence.[28] In *State v. Vrieling*,[29] we determined that so long as the home is located in a vehicle, vehicle search rules apply with no distinction drawn based on the vehicle's use as a permanent residence as opposed to its use as a temporary sleeping compartment.[30]

Additionally, Washington's motor vehicles statutes define a motor vehicle as "every vehicle which is self-propelled and every vehicle which is propelled by electric power obtained from overhead trolley wires, but not operated upon rails."[31]

Here, the trailer is not a tractor-trailer. It is not a motor home or Winnebago as in *Vrieling*. Nor was the trailer found on a public highway or in a public place. The trailer was not attached to any motorized vehicle. The fact that there was no motorized vehicle there with the proper receptacle attached made the trailer not readily mobile. Accordingly, the immobile trailer is more akin to a dwelling for search and seizure analysis, and not subject to the automobile exception.

█ We also reject the community caretaking function argument. The United States Supreme Court first announced the "community caretaking function" exception in *Cady v. Dombrowski*.[32] The Washington Supreme Court

---

[26] *Johnson*, 128 Wn.2d at 436.

[27] *Johnson*, 128 Wn.2d at 436.

[28] *Johnson*, 128 Wn.2d at 449-51.

[29] 97 Wn. App. 152, 983 P.2d 1150 (1999), *aff'd*, 144 Wn.2d 489 (2001).

[30] *Vrieling*, 97 Wn. App. at 158.

[31] RCW 46.04.320.

[32] 413 U.S. 433, 441, 93 S. Ct. 2523, 37 L. Ed. 2d 706 (1973).

first cited *Cady* in *State v. Houser*,[33] an automobile impoundment case. *Houser* rejected the community caretaking exception theory under the facts there because the State failed to show the necessity, i.e., that the vehicle threatened public safety or convenience.[34] Here, the State argues that although the police did not impound the trailer, there was ample concern that the trailer could be subject to future vandalism and theft.[35] There is no evidence in the record to support this assertion, nor is there evidence that the trailer threatened public safety. Moreover, the community caretaking function must be "totally divorced from a criminal investigation."[36] Here, the detectives were obviously engaged in a criminal investigation.

▆▆ Finally, we do not agree with the State that implied consent to search the trailer was given by the registered owner simply by virtue of reporting it stolen. The owner had instructed the police not to impound the trailer, and the trailer was left on private property for the owner to retrieve it.

There were no exigent circumstances which obviated the need to obtain a search warrant. Based on the property owner's statements, a warrant could have readily been obtained. We conclude that the search cannot withstand constitutional scrutiny.

Reversed.

GROSSE, J., and WEBSTER, J. PRO TEM., concur.

Review denied at 149 Wn.2d 1029 (2003).

---

[33] 95 Wn.2d 143, 622 P.2d 1218 (1980).

[34] *Houser*, 95 Wn.2d at 151-52 (quoting *South Dakota v. Opperman*, 428 U.S. 364, 368-69, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976)).

[35] *Simpson*, 95 Wn.2d at 189 (the police can impound a vehicle if it is threatened by vandalism or theft of its contents).

[36] *State v. Kinzy*, 141 Wn.2d 373, 385, 5 P.3d 668 (2000), *cert denied*, 531 U.S. 1104 (2001).